## T. J. NALLEY v. HOME INSURANCE COMPANY, Appellant.

**Division One, May 31, 1913.**

1. **INSURANCE: Uniform Policy: Delegation of Legislative
   Power.** The Legislature cannot delegate the important legislative
   function of prescribing the form of fire insurance contracts to the
   Insurance Commissioner or to the insurance companies doing
   business in this State, or to both acting conjointly. So much
   of Sec. 7030, R. S. 1909, as requires fire insurance companies
   doing business in this State to agree upon a uniform policy for
   use by them, to be approved by the Insurance Commissioner, and
   prohibiting the issuance of any other policy which does not
   embrace the form so made and approved, is unconstitutional and
   void, as an unwarranted delegation of legislative power.

2. **CONSTITUTIONALITY OF STATUTE: Separable Provisions:
   Legislative Intent: Valued Policy Law.** A part of a statute
   may be unconstitutional and the remainder valid. If after
   the invalid portion is separated a good law remains, one within
   the legislative intent, what remains is valid. But if by the

process of elimination the legislative intent is changed, no part of it is valid; and in getting at that intent, the whole act, the constitutional and unconstitutional parts, must be considered. The portion of the Act of 1895 (Sec. 7030, R. S. 1909), which refers to a uniform fire insurance policy, to be agreed upon by the Insurance Commissioner and insurance companies, is unconstitutional, and may be stricken out and leave a complete law embracing the three subjects, namely, time in which notice of loss is given, how notice may be waived, and what is known as the "valued policy" provision, without a change in the legislative intent, although all four subjects are embraced in one section.

3. ———: Title: Single Subject: Valued Policy Law. Where all the provisions of a statute fairly relate to the same subject, have a natural connection with it, and are the incidents and means of accomplishing it, then the subject is single, and if it is sufficiently expressed in the title, the statute is valid. If all the provisions of the act have a natural relation and connection, the subject is single. An act whose three provisions declare (1) within what time notice of loss by fire must be given, (2) what constitutes a waiver of such notice and (3) what is meant by a "valued policy," has but one subject, and all are germane to the title, which is: "An Act relating to Fire Insurance and Form of Policies;" nor is it invalid as to those subjects, although other provisions in it relating to a uniform policy are stricken out as an invalid delegation of legislative power.

Held, by WOODSON, P. J., dissenting, that the principal subject of the act is a uniform policy for fire insurance, and that part of the act being unconstitutional and void, and the notice to which the act refers being the notice provided for in said uniform policy, all the rest of the act is of necessity invalid.

4. ———: ———: ———: Title "Fire Insurance:" Provision For "Fire and Lightning." A provision in the body of the act for "risks by fire and lightning" is embraced in a title which speaks only of "Fire Insurance." Fire and lightning risks are usually covered by the same insurance policy, and fire is sometimes set by lightning.

Held, by LAMM, J., dissenting, that the policy sued on being one for loss by tornado, and it being held that the statute does not embrace tornado insurance, whether or not so much of it as applies to fire insurance is constitutional and void is a question not for determination, and what is said on that score is obiter, and in no sense res adjudicata.

5. ———: Title Fire Insurance: Provision for Tornado: Valued Policy. The term "fire insurance," used in the title to the

Nalley v. Home Insurance Co.

"valued policy" Act of 1895, is not broad enough to include tornado or cyclone insurance. No part of the Act of 1895 applies to tornado insurance. The "valued policy" law does not include tornado insurance. The court erred when it gave an instruction to the effect that the insurance company could not deny that plaintiff's building was worth $2666.66 because it had issued the tornado policy for $2000 sued on.

6. ————: **Valued Policy Law: Insurance Other Than Life: Breadth of Statute.** The fact that the statutes speak of "life insurance" and "insurance other than life" does not make them broad enough to make the provisions of the "valued policy" law include tornado insurance.

7. **TORNADO INSURANCE: Things That Must Be Proved: Notice: Value of Property Destroyed.** In a suit on a tornado policy the insured must prove the value of the property insured; and the questions of notice and waiver of notice are to be determined by the terms of the policy. The provisions of the statute relating to those subjects in the statute concerning fire insurance are not applicable to tornado insurance.

Appeal from Pike Circuit Court.—*Hon. D. H. Eby,* Judge.

REVERSED AND REMANDED.

*J. D. Hostetter* and *Fyke & Snider* for appellant.

(1) The Act of 1895 (Laws 1895, p. 194, being Sec. 7030, R. S. 1909) is unconstitutional. Constitution, art. 4, sec. 28. The act consists of but one section. The first part of the section delegates to fire insurance companies doing business in the State of Missouri and the Insurance Commissioner authority to agree upon a uniform form of policy for use by said insurance companies in the State of Missouri to be classed and known as the Missouri fire insurance policy. That part of the section is unconstitutional because it attempts to delegate to the fire insurance companies and the Insurance Commissioner authority which is vested only in the Legislature. O'Neil v. Insurance Co., 166 Pa. St. 72; Dowling v. Ins. Co., 92 Wis. 63; Anderson v. Fire Assn. Co., 59 Minn. 192; Lockes' Appeal, 72 Pa. St.

491; Railroad v. Commissioners, 1 Ohio St. 88. (2) It cannot be claimed that the title to the act embraces any risk except against loss by fire, nor can it be claimed that if the act does embrace other classes of risks, the subject is clearly expressed in its title. State v. Coffee Co., 171 Mo. 634; State ex inf. v. Bordon, 164 Mo. 221; State v. Smith, 233 Mo. 255. Insurance against loss or damage by lightning or by windstorm, cyclone or tornadoes, is not germane to insurance against loss by fire. They are entirely distinct and separate. Hence an "act relating to fire insurance and form of policies" cannot be held to relate to insurance against lightning or to insurance against loss by windstorm, cyclone or tornadoes.

*Pearson & Pearson* for respondent.

(1) The question of the constitutionality of Sec. 7030, R. S. 1909, has previously been before this court; and by this court held to be constitutional. Business Men's League v. Waddell, 143 Mo. 495. (2) This is no legislative authority delegated to the commissioner. It is only a duty imposed upon him to see that the laws of the State are enforced. The Legislature has enacted into a law, that all insurance companies doing business in this State shall agree upon and use a uniform policy of insurance. And, by this section, the Legislature has simply charged it as a duty upon the Insurance Commissioner to see that such uniform policy, so agreed upon by the insurance companies, is satisfactory, and in all other particulars complies with the laws of the State. (3) The statutes of Missouri classify as one subject insurance other than life. Art. 6, chap. 61, R. S. 1909. The one subject of this entire article, within the meaning of the Constitution, is, broadly speaking, insurance other than life. Under this head, there are four subdivisions any one of which is merely incidental to, and a part of "one subject,"

insurance other than life.  The first subdivision of which covers insurance against loss or damage by "Fire, Lightning, Hail and Windstorm."   Sec. 6995, R. S. 1909.   Fire insurance is the great predominant insurance of this class.   The legislators have used the term Fire Insurance, for all insurance of this class, and especially of this subdivision.   Hanna & Co. v. Ins. Co., 109 Mo. App. 159; Gibson v. Ins. Co., 82 App. 521.   (4)  Appellant charges error on the part of the court, in giving plaintiff's instruction as to the value of the property at the time of issuing policy.  A similar instruction to this has been before the courts many times, and has been universally approved by the appellate courts.   Hanna & Co. v. Insurance Co., 109 Mo. App. 157; Stevens v. Insurance Co., 120 Mo. App. 88; Gibson v. Ins. Co., 82 Mo. App. 515; Crossam v. Ins. Co., 133 Mo. 539; Siegler & Son v. Ins. Co., 107 Mo. App. 456; Ritchey v. Home Ins. Co., 104 Mo. App. 146.

GRAVES, J.—This is an action upon what is ordinarily called a "Cyclone or Tornado policy" of insurance, wherein the plaintiff seeks to recover $2000 for damages to his residence in Pike county, Missouri. The petition is in usual form and unchallenged here, therefore further particulars of this pleading may be omitted.   The crux of the case lies in the answer and other matters injected in the course of the trial.   The points in the answer can best be stated by the terms of that pleading.   Such answer is as follows:

"The defendant for answer to plaintiff's petition says:

"1st.   It admits that it is licensed to do business in the State of Missouri, and has engaged in doing the windstorm, cyclone and tornado business.

"2nd.   It admits that on the 10th of January, 1906, it made the policy of insurance mentioned in the petition.

"3rd. Further answering defendant says it is provided in said policy as follows: 'In case of loss the assured shall give this company immediate written notice thereof at the office of the Western Farm Department of the company at Chicago, Illinois, and within sixty days thereafter shall render to such office, under oath, a particular and detailed statement and proof of the actual cash value at the time of the loss of any property or articles upon which loss or damage is claimed.' And defendant alleges that if plaintiff sustained any loss by windstorm, cyclone or tornado, on the 22d day of November, 1908, he did not give to defendant immediate notice thereof and never did at any time, and never has furnished defendant under oath a particular and detailed statement and proof of such loss as required by the terms of said policy; by reason whereof plaintiff is not entitled to recover.

"Further answering defendant denies each and every allegation, matter, fact and thing in the petition alleged not herein expressly admitted, and having fully answered asks to go hence with its costs."

Reply was in conventional form.

Plaintiff had a verdict for $1750 and interest, and from a judgment thereon the defendant has appealed. The case reached this court by reason of a constitutional question which first arose upon the giving of an instruction for the plaintiff, and later pressed in the motion for new trial, thus:

"The following instruction given by the court at the request of the plaintiff, to-wit: 'The court instructs the jury that the defendant insurance company is forbidden by the law to insure any property for more than three-fourths of its value at the time of issuing its policy of insurance on the property therein described; that the sum insured on the one and two-story brick and frame dwelling house described in defendant's policy of insurance sued on is $2000. That for

the purpose of this case the law fixes the value of said property at the time of issuing said policy of insurance at the sum of $2666.66, and defendant cannot now deny that the said one and two-story brick and frame dwelling and foundation was at the time of issuing said policy of the said value of $2666.66.' is erroneous, prejudicial and misleading, for the reason that there is no law so fixing the value of said property. That is, the court bases said instruction on section 7979, Revised Statutes 1899, said instruction is erroneous because said section is not applicable to companies writing windstorm, cyclone, or tornado policies, and for the further reason that said act which was passed by the Legislature in 1895, Laws 1895, p. 194, is violative of section 28 of article 4 of the Constitution of Missouri, in that said bill or act as passed by the Legislature aforesaid contains more than one subject, and all the subjects contained in said act are not clearly expressed in its title, and said act attempts to delegate legislative functions to insurance companies and the Insurance Commissioner of the State of Missouri." ·

Such is a fair outline of the case, leaving to the opinion the further details both of evidence and pleadings.

I.   The constitutionality of section 7030, Revised Statutes 1909, is challenged by the defendant. This section comes from the Act of 1895. [Laws 1895, p. 194.]   The title to that act reads: ''An act relating to Fire Insurance and Form of Policies.''   The body of the act, which contained but one section, is as follows:

''Section 1.  Fire Insurance companies doing business in the State of Missouri are hereby required, on or before the first day of January of the year 1896, to agree upon a uniform form of policy for use by them in the State of Missouri, covering the responsibilities of the companies as well as the duties of the assured, to be classed and known as the Missouri fire insurance

policy.  Said policy shall be approved of by the Insurance Commissioner of this State, and after the first day of January, A. D. 1896, no policy shall be issued in this State carrying risks by fire or lightning by any company which does not embrace the form made and approved of as herein directed.  To all such policies shall be attached a blank notice, with the address of the company fully printed thereon, to be used by the assured in case of loss in notifying the company of such loss, which notice shall be given within ninety days thereafter.  The appearance of an adjuster of any company at the place of fire and loss in which said company is interested by reason of an insurance on such property, shall be considered evidence of notice, and to be held as a waiver of the same on the part of the company. No company shall take a risk on any property in this State at a ratio greater than three-fourths of the value of the property insured, and when taken, its value shall not be questioned in any proceeding.''

The first point urged against the validity of the law is that it is an unwarranted delegation of legislative powers.  The contention is that there was left to the insurance companies then doing business in the State and the then Insurance Commissioner the power to fix a form of policy to be used in Missouri, and that the exercise of that power is the performance of a duty incumbent upon the Legislature, which duty cannot be delegated to another.  There is no question from the case law that the Legislature can prescribe a form of policy to be used in this State.  Nor do we think that there is much question about that portion of the Act of 1895, which refers to the adoption of a form of policy by the insurance companies and the Insurance Commissioner being invalid as being an unwarranted delegation of legislative power. Whether it invalidates the whole act, we discuss later. It is claimed by the plaintiff that this court held the Act of 1895 constitutional in the

*Delegation of Legislative Power.*

case of Business Men's League v. Waddill, 143 Mo. 495. In this plaintiff is in error. In the Waddill case we made no attempt to discuss the constitutionality of the act. We did say that such question was urged, but this court saw fit, to permit that case to ride off upon another question, i. e., that the plaintiff had no sufficient interest to give them a standing in a court of equity. This court therefore has not heretofore passed upon the question.

In Pennsylvania the act of 1891 authorized the Insurance Commissioner to prepare a form of policy to be used, and such law was declared invalid. [O'Neil v. Insurance Co., 166 Pa. St. 72.] The court among other things said:

"In the light of this line of well considered cases let us examine the act of 1891 in order to get its provisions before us. Section first declares 'That the Insurance Commissioner shall prepare and file in his office, on or before the fifteenth day of November, 1891, a printed form in blank, of a contract or policy of fire insurance, together with such provisions, agreements or conditions as may be indorsed thereon or added thereto and form a part of such contract or policy; and such form when filed shall be known and designated as the standard fire insurance policy of the State of Pennsylvania.' Section second provides among other things for the incorporation of the provisions of the standard policy into the contracts of insurance made on property within the State by foreign insurance companies. Section third makes the use of this standard form of policy obligatory on all fire insurance companies doing business in this State from and after the first day of May, 1892. Section fourth provides the penalties to be imposed upon any insurance company, its officers or agents or either of them, for failure to comply with the requirements of the act or with the form of policy which the Insurance Commissioner may devise and file in his own office.

"It may be well to say in this place that we do not now deny the power of the Legislature to direct the form of a policy of insurance against fire. We held in Commonwealth v. Vrooman, 164 Pa. St. 306, decided in October last, that the business of insurance against loss by fire was, by reason of its nature, its magnitude, and the temptation to improper practices which it presented, a proper subject for legislative regulation and control. The power to prohibit technical and unjust conditions intended to open the way to vexatious litigation and to defeat the just expectations of the insured, belongs to the police control which Commonwealth v. Vrooman asserted. The question is not therefore one of power over the subject, but of the manner in which the conceded power must be exercised. Upon this question our judgment is with the appellant for reasons that we will state as concisely as possible. and without any attempt at elaboration.

"The Act of 1891 is a delegation of legislative power because.

"First. The act does not fix the terms and conditions of the policy the use of which it commands.

"Second. It delegates the power to prescribe the form of the policy, and the conditions and restrictions to be added to and made a part of it, to a single individual.

"Third. The appointee clothed with this power is not named but is designated only by his official title. He is the person who may happen to be Insurance Commissioner when the time comes to prepare the form for the standard policy for insurance against fire.

"Fourth. The appointee is not required to report his work to the body appointing him, but simply to file in his own office the form of policy he has devised. It does not become part of the statute in fact, is not recorded in the statute book, and no trace of it can be found among the records of either branch of the Legislature.

"Fifth. The act was approved in April, 1891. The appointee had until the following November to prepare and file the form of policy over which when filed the Legislature had no control whatever. They did not consider, they had no knowledge of, the form which they required all companies doing business in the State to adopt and the use of which they compelled by heavy penalties.

"The elementary books divide a statute into three parts, the declaratory, the directory and the vindicatory. In this statute the Legislature furnished the first and third. It delegated the preparation of the second. It declared in effect the need of a standard form of policy. It provided punishment for the failure to use such form when provided; but it turned the preparation of the form over to its appointee and gave him six months in which to do his work and file a copy of it in his own office. Whoever might be interested in knowing the directory part of the statute and understanding what it was he was required to do, had to go beyond the act of Assembly and inquire of the appointee of the Legislature what it was he had filed in his own office, of which the people of the commonwealth were bound to take notice at their peril.

"It will not do to say that the preparation of the form was an unimportant matter of detail, or an act partaking of an executive or administrative character. It was the sole purpose of the act. It was the only subject named in its title. The enforcement of the standard form of policy was the only object of its penalties. Take out the form prepared by the Insurance Commissioner and to be found in some pigeon hole in his office, and the act is without meaning or effect, it is completely eviscerated.

"We do not see how a case could be stated that would show a more complete and unconstitutional surrender of the legislative function to an appointee than that presented by the Act of 1891. By its provisions

the Legislature says in effect to its appointee, 'Prepare just such a policy or contract as you please. We do not care to know what it is. The governor shall have no opportunity to veto it. File it in your own office and we will compel its adoption, whether it is right or wrong, by the punishment of every company, officer or agent who hesitates to use it.'

"We do not take time to examine the voluminous conditions loaded upon the back of a very simple and concise contract of insurance. The assignments of error do not bring them before us for this purpose. The learned judge of the court below gave them careful consideration and he was of opinion that they were unjust and oppressive. Speaking of the form of the standard policy as a whole he said, 'I look upon it as infamous.' Again he said, 'The conditions put in that policy go beyond almost any policy that ever was exhibited in the courts before. Numerous provisions were put in that the courts had declared void because they were so unjust and inequitable.' Speaking of its general character and effect he said: 'It seems to be framed in the interest of dishonest companies and insurance brokers and puts an honest insurance company and honest officers of a company at a very great disadvantage.'

"This is a very serious arraignment of the 'standard policy,' to which we refer, without comment of our own, for the purpose of showing the impolicy of such delegation of legislative power as might make it possible to fasten upon the people of the commonwealth a form of contract, open to such grave objections.

"It is not to be supposed that a law really mischievous in its operations could pass both houses of the Legislature unchallenged. If by reason of any complication of circumstances this should happen in any given case, then the people have a remaining safeguard in the veto power possessed by the Governor.

The Act of 1891 steered past both legislative discussion and executive veto, and vested in the insurance commissioners the power to fill in its directory provisions, and supply the form of insurance contract it was to enforce, without even the knowledge of the Legislature or the Governor of a single one of its many provisions that were to be bound by fines and penalties on insurers and insured all over the commonwealth.

"Our conclusion is that the act of 1891 is void because clearly unconstitutional."

I can see no difference in delegating the power to prescribe the form of the insurance contract to the Insurance Commissioner alone, and in delegating it to the Insurance Commissioner and the insurance companies. In Dowling v. Insurance Co., 92 Wis. l. c. 73, in discussing a statute similar to the Pennsylvania act, supra, the Wisconsin court said:

"Within the lines indicated, a discretion was reposed in the commissioner as to the form of the policy which embodied the substance of the contract, and which was to have the sanction and force of law. The effect, clearly, was to transfer to him bodily the legislative power of the State on that subject. Within the limits prescribed, he was to prepare just such a policy or contract as, in his judgment and discretion, would meet the legal exigencies of the case, no one could certainly predict what the result of his action might be. It was not to be published, as laws are required to be, or to be approved by the Governor. It was to be filed in the office of the Insurance Commissioner, instead of being deposited in the office of the Secretary of State, and its use was to be enforced by the penal sanction of the act. He was not required by the act to perform any mere administrative or executive duty, or to determine any matter of fact for the purpose of executing or carrying the act into effect.

"The result of all the cases on this subject is that a law must be complete, in all its terms and provisions, when it leaves the legislative branch of the government, and nothing must be left to the judgment of the electors or other appointee or delegate of the Legislature, so that, in form and substance, it is a law in all its details *in praesenti*, but which may be left to take effect *in futuro,* if necessary, upon the ascertainment of any prescribed fact or event. Instead of preparing a form of standard policy and adjusting it to the existing legislation, or modifying such legislation, if necessary, by virtue of its constitutional functions, the Legislature delivered over this task wholly to the Insurance Commissioner, to accomplish it as nearly as might be; and this depended wholly upon his discretion and judgment as to what the law should be in this respect, for the act had not specifically declared it. Conceding that the Legislature might have adopted the New York form as an entirety by the use of general language, it is evident that the proposed form, to conform 'as near as can be to the form adopted in New York,' involved a duty equivalent to that of revision, which it cannot be contended could be delegated except subject to legislative approval. While the commissioner, within the discretion intrusted to him, might have approximated in a great degree to the policy which the Legislature may have intended, the objection, in view of the consideration stated, that it has not received the legislative sanction, is necessarily fatal to it.

"The cases of State ex rel. R. & W. Comm. v. C. M. & St. P. R. R. Co., 38 Minn. 298, and Chicago & N. W. R. R. Co. v. Dey, 35 Fed. 866, are not in conflict, but in harmony, with the conclusion we have reached, as to what is and what is not an unconstitutional delegation of the legislative power.

"For these reasons, we hold that the provision authorizing the Insurance Commissioner to prepare, approve, and adopt a printed form in blank of a contract or policy of fire insurance, together with such provisions, agreements, or conditions as may be indorsed thereon or added thereto and form a part of such contract or policy, and that such form shall, as near as the same can be made applicable, conform to the type and form of the New York standard fire insurance policy, so called and known, is unconstitutional and void. Conclusions in accord with these views, in somewhat similar cases, have been reached in other States. [Anderson v. Manchester F. Assn. Co. (Minn.), 63 N. W. 241; O'Neil v. Am. F. Ins. Co., 166 Pa.St. 72.]

"The instruction of the court to the jury that if the plaintiff Dowling, at the time the policy was issued, stated to defendant's agent fully the existence of the incumbrances, they would find in favor of the plaintiffs, was correct and in conformity with previous decisions of this court on the subject of waiver of conditions of forfeitures in the policy against incumbrances. [Renier v. Dwelling House Ins. Co., 74 Wis. 94, and cases there cited; Bourgeois v. Mut. F. Ins. Co., 86 Wis. 402.]"

The same ruling was made in Anderson v. Insurance Co., 59 Minn. 182, and the Pennsylvania case, supra, cited with approval. So that we repeat that there can be no question (owing to the intricacies of insurance contracts) that the Legislature can prescribe a form for such contracts to be used in this State, but in our judgment it cannot delegate this important task to either the Insurance Commissioner or to the insurance companies, or to both combined. If public policy demands that the public be protected in these contracts the police power is no doubt broad enough to authorize legislative action, but it yet remains a legislative duty, which cannot be delegated. We are of opinion, that in so far as the Act of 1895 undertakes

to permit the insurance companies, with the approval
of the Insurance Commissioner, to write the terms of
an insurance policy, it is void for constitutional rea-
sons.

II.  When we eliminate from the Act of 1895 that
portion which refers to the Missouri form of a policy
and the method of its creation, we have left the fol-
lowing:

"Sec. 1. . . . To all such policies shall be
attached a blank notice, with the address of the com-
pany fully printed thereon, to be used by the assured
in case of loss in notifying the company of such loss,
which notice shall be given within ninety days there-
after.  The appearance of an adjuster of any company
at the place of fire and loss in which said company is
interested by reason of an insurance on such property,
shall be considered evidence of notice, and to be held
as a waiver of the same on the part of the company.
No company shall take a risk on any property in this
State at a ratio greater than three-fourths of the value
of the property insured, and when taken, its value shall
not be questioned in any proceeding."

This part of the statute covers three matters: (1)
Time in which notice of loss must be given; (2) how
notice may be waived; and (3) what is known as the
"valued policy" law.

Defendant challenges the constitutionality of the
whole act and says that it violates section 28,
article 4, of the Constitution, in that the sub-
ject-matter of the act embraces more than
one subject and embraces subjects not clearly
expressed in its title.  That a part of an act may be
unconstitutional and the remainder be valid has often
been announced by the courts.  So in this case it does
not necessarily follow that, because that portion of the
act providing for a uniform insurance contract in Mis-
souri is invalid, the whole law must fail.  If the invalid

Statute:
Sufficient
Title.

portion can be carved from the act, and yet leave a
good law, and one within the legislative intent, then
the remainder should stand. If by the process of elim-
ination the legislative intent is changed, no part of the
act can stand. And further in getting at the legislative
intent the whole act, the unconstitutional as well as
the constitutional portions, must be considered. But if
when all is thus considered, and it is seen that the
unconstitutional portion can be stricken out, and yet
there remains a complete law, within the legislative in-
tent, such portion of the act should stand. In our judg-
ment that portion of this act, condemned in our para-
graph one, can be eliminated from the Act of 1895, and
leave a complete law, covering the three matters men-
tioned, supra, i. e. (1) time of notice of loss, (2) waiver
of notice, and (3) the "valued policy" theory, and all
fully within the original legislative intent. The last
portion of the act should not, therefore, fall simply
because the first portion must fall under the constitu-
tional edict as to the delegation of legislative powers.
But defendant urges that this does not save the act.
Defendant contends that it must fall, as a whole, under
the constitutional ban placed thereon by section 28,
article 4, supra. This requires us to go to the title of
the act. If the subject-matter of the latter portion of
this act is within the limits of this title, or germane
thereto, then it should stand, but otherwise it must fall.
Singleness of subject in title to bills or legislative acts
has been often before this court, but we know of no
clearer statemnnt of our rule than that made by FER-
RISS, J., in the very recent case of State v. Smith, 233
Mo. l. c. 255, whereat he said:

"The statute in question does not violate section
28 of article 4 of the Constitution. The act contains
one subject which is clearly expressed in the title. The
title of the act is not 'Medicine and Surgery,' as de-
fendant asserts it to be in his brief. The words 'Medi-
cine and Surgery' are merely the caption. The title

to the act is as follows: 'An act to regulate the prac·tice of medicine, surgery and midwifery, and to prohibit treating the sick and afflicted without a license, and to provide penalties for the violation thereof.' [Laws 1901, p. 207.]

"The one 'subject' of this act, within the meaning of the Constitution, is, broadly speaking, public health. [State v. Marble, 72 Ohio St. 1. c. 36.] Treating the sick is well within the subject, and is specifically covered by the title. It is unnecessary to cite the cases in this State on this proposition. This court has again and again, with patient repetition, expounded the law upon this constitutional provision, and the law so expounded is this: 'Where all the provisions of a statute fairly relate to the same subject, have a natural connection with it, and are the incidents or means of accomplishing it, then the subject is single, and if it is sufficiently expressed in the title, the statute is valid.' [State v. Doerring, 194 Mo. 398, and cases therein cited.] The practice of medicine, or surgery, and the treatment of the sick by whatever means employed, are certainly germane to each other and are germane to the general subject of health.

" 'This section of the Constitution is to be reasonably and liberally construed and applied, due regard being had to its object and purpose . . . If all the provisions of the bill have a natural relation and connection, then the subject is single, and this, too, though the bill contains many provisions.' [State ex rel. v. Bronson, 115 Mo. 1. c. 276.]

"If the treatment of the sick and the practice of medicine and surgery are not in natural relation, then it will be difficult to conceive of a case where two or more provisions in a bill relate to each other."

Let us look at the title to the act in question. It is: "An Act relating to Fire Insurance and Form of Policies." "Fire Insurance" is a very broad subject. Many things are germane to such a subject. The

broadness of the subject mentioned in the title does not invalidate the act. Now, can it well be said, that the time in which notice of a loss by fire and consequent damages under an insurance policy must be given, is not germane to this subject? We think not. Nor can it be said that statement of what shall be deemed a waiver of this notice is not germane to the subject. If the provision as to notice is germane, it of necessity follows that what may constitute a waiver of that notice would likewise be germane. The third matter mentioned, supra, is the "valued policy" feature. For this the laws of Missouri have been condemned in insurance circles, and to my mind unjustly condemned. The most fruitful source of incendiaryism is excessive insurance. Such incendiary fires often hurt the innocent and honest citizens. Anxious insurance agents, with an eye single to the commission coming into their pockets, encouraged large policies, and the innocent public were made to suffer. Insurance companies did not suffer so much because they got premiums on enhanced valuations, and these in a way removed a desire to restrict their agents. Not only so, if losses occurred, whether legitimate or illegitimate, they only had to pay the actual value of the honest losses, and a chance to defeat all the dishonest losses. The fault of a "valued policy" law lies with the agents of the companies, and not in the law. With honest, careful, painstaking agents (representatives of the companies) dishonest losses can be made a thing of the past in Missouri. But this is by the wayside. Reverting to the question in this case. Is that matter one which is foreign to the title of this act or is it one germane to the subject in the title? We think it clearly germane and fully covered by the title. This contention of defendant is therefore overruled.

III. It is urged further that the body of the act speaks of "risks by fire or lightning," whilst the title

only speaks of "Fire Insurance," and that for that reason the act itself deals with a subject not covered

by the title. We are not impressed with this **Fire Insurance.** view of the matter, although this is the closest question in the whole record. As a court we cannot close our eyes to what is generally known, and it is generally known that fire and lightning risks are usually covered by the same policy. Not only so, but a great many losses through lightning result from fire, which is set to burning by lightning. Ordinarily when we speak of a fire insurance policy we mean one which covers loss by both fire and lightning. Such has been the general understanding of fire insurance policies for years, and such has been the general understanding of "fire insurance," i. e., an indemnity against loss both by actual fire and by lightning. In my judgment such is the sense in which the term "fire insurance" is used in the title to the act, and if so defendant's contention must fall.

IV. There are, however, one or more questions in this case which will preclude the present judgment

from standing. Whilst we have held that **Tornado Insurance: Valued Policy Law.** the term "fire insurance" is broad enough to cover "lightning insurance" because of the generally accepted meaning of the term, yet it is not broad enough to cover tornado or cyclone insurance, and it has never been so generally understood or accepted. This is an action on a tornado policy. The Act of 1895 and none of the provisions thereof apply to this policy, and the court erred when it gave an instruction to the effect that the defendant could not deny that the building was worth not less than $2666.66, because defendant had taken a tornado risk thereon for $2000. In other words, the court erred in applying the "valued policy" law to a tornado policy of insurance. It is true that as a general classification of insurance our laws speak of "life

insurance'' and ''insurance other than life,'' but it does not follow from this that all statutes on insurance other than life apply to each of the many kinds of insurance risks. The peculiarities of the many different kinds of risks make them classes unto themselves, although they may fall within the very general class of ''insurance other than life.'' Statutes which could be made applicable to one of sundry classes could not be made applicable to each and all of them. In such case the law, if intended to cover all, must state so explicitly, or by an inference so strong as to leave no doubt of the legislative intent. By its terms this statute does not cover tornado insurance, nor is there any very violent inference that it was ever so intended. This being a tornado policy and therefore one not within the terms of our valued policy law, the plaintiff should be put upon his proof as to the value of the property injured. We must gather the legislative intent from the whole act, as said before, and if in doubt we may look to the title as an aid in determining the legislative intent. When the whole act (of which the ''valued policy'' law is a small part and parcel) is viewed, it is evident that the Legislature only had in mind fire insurance and not tornado insurance. In other words, no part of this act applies to that class of insurance. Upon the question of notice and waiver of notice the parties will have to be relegated to the terms of the policy itself and to general rules of law, rather than the statute here under consideration.

For these reasons the judgment is reversed and the cause remanded.

Other questions of error need not be discussed, because this ruling will evidently change the whole trend of a new trial of the cause.

Let the judgment be reversed and the cause remanded.

All concur. *Woodson, P. J.,* and *Lamm, J.,* in separate opinions.

## SEPARATE OPINION.

WOODSON, P. J.—I heartily concur in the entire opinion of our learned associate, except as to paragraph III, to which I dissent for the reason:

That while I fully concur in the general doctrine that many things may and should be held to be germane to the principal subject of the act or bill introduced in the Legislature for passage, and need not therefore be specially mentioned therein, yet I am of the opinion that when the principal part of the act or bill is declared unconstitutional, null and void for any reason, then it is self-evident that all germane and incidental matters thereto are likewise unconstitutional, null and void.

**Fire Insurance: Unconstitutional Law.**

Now what is the principal subject of the act under consideration  Answer: I think it is unquestionably a *uniform policy of fire insurance;* and if that is true, which I believe cannot be successfully denied, then the notice which the act refers to must of necessity refer to the notice provided for in said "uniform policy," and if that policy is void because the statute is unconstitutional, null and void, the same as if it had never been enacted, then there is nothing left to which the notice mentioned in the latter part of said section of the statute could apply; and if that is true, then I am unable to see how it can be logically contended that the germane part of a statute can stand when the thing to which it is germane is dead or has no existence.

The germane matter referred to in such statutes may be likened unto a satellite; that is, a matter or person attached to and dependent upon some superior matter or person, and if the superior matter or per-

son is destroyed by any means whatever, then the satellite of necessity is destroyed also; for when that relation between the two is destroyed by exterminating the former, which gives birth and existence to the latter, then no longer can the satellite exist, and consequently the latter of necessity must perish with the former. So in the case at bar, if the "uniform policy" is invalid then of necessity that part of the act, regarding the notice of loss, etc., and the waiver thereof, must of necessity pass from the realms of the law with its parent and supporter.

## CONCURRING OPINION.

LAMM, J.—As to the fourth paragraph of my learned Brother GRAVES's opinion, I agree to it. Whether the language of the lawmaker in section 7030, Revised Statutes 1909, be alone considered or whether that language be broadly interpreted from the viewpoint of the reason of the thing in the light of the spirit of the statute, the intendment of the lawmaker and the inherent nature of the subject-matter, either course leads to the same conclusion, to-wit, that the section does not apply to wind insurance. True both wind and fire are blows to man and their affairs, yet fire is not wind and wind is not fire. A statute which the lawmaker has industriously confined to "fire insurance," as here, may not be construed to include "cyclone and tornado insurance" or "burglar insurance" or "plate-glass accident insurance." Read as closely as you may, there is not a particle of internal evidence in that section that the eye of the lawmaker or his solicitude took in the latter forms of insurance in drafting his law. Fire insurance and wind insurance do not so belong in one class that the mention of one inherently includes the other. When the lawmaker intends to include wind insurance he has been

Tornado Insurance: Valued Policy.

astute to that end and says so. [See caption to Oliver Law, Laws of 1911, p. 267.]

Verily, men by accident or design raise fires, but however much they raise this wind or that, they by neither raise the particular kind of wind insured against in tornado and cyclone risks. As the danger of over-insurance in fraudulently exciting fires that sweep away the property of the innocent and guilty alike, is doubtless one main motive back of section 7030, it is apparent that no such danger springs from cyclones and tornadoes or any other form of *vis major* or *vis divina*.

Having reached the conclusion that the case does *not* fall within section 7030, then, by that holding, the constitutionality of that section is no longer held in judgment in this case. The maxims are: A court has nothing to do with what is not before it; a court should not judicially decide what is not judicially presented. To hold one way or the other on the constitutionality of a fire insurance law in a case where fire insurance and a fire insurance policy are not the subject-matter of litigation, is to inadvertently step aside into *obiter*. The decision, therefore, *decides* nothing. It may illuminate or persuade (as it does) but it cannot *control* when the question comes up in some case riding off on the point. Its only office is to mark time, it leads nowhere, it goes nowhere. If by ruling the statute constitutional in part and not constitutional in part the decision would come under the doctrine of *stare decisis* or *res adjucata* and thus be a precedent to be followed below or above, I would be inclined to agree to it, as now advised, but as it can have no such effect, I mark myself as saying nothing on the question of constitutionality. If the thing "were done when 'tis done then 'twere well it were done quickly" (by a side stroke, as my brother does it). But as 'tis *not* done when 'tis

**Obiter:
Unconstitutionality of Fire Statute.**

done, then were it not well it were not done at all till the time is ripe to so do it that it will be done once for all? "Reserve your fire" said the Bunker Hill officer, "till you see the white of their eyes"—that is, till you have a mark to shoot at in close range. May not judicial "fire" profit by that advice?