**MOODY, Governor, v. JONES et al.**
**(No. 3580.)**

Court of Civil Appeals of Texas. Texarkana. July 4, 1928.

Rehearing Denied July 12, 1928.

Claude Pollard, Atty. Gen., and Allen Clark, Asst. Atty. Gen., for appellant.

Bruce M. McMahan, of Greenville, and McCormick, Bromberg, Leftwich & Carrington, of Dallas, for appellees.

HODGES, J. The Celeste State Bank had been organized some time prior to April, 1925, and was doing business at Celeste, in Hunt county, under what is known as the guaranty fund system. Later the stockholders of the bank decided to change the form of securing its depositors from the guaranty fund plan to the bond security system. On June 26, 1926, the following bond was executed and filed with the state banking commissioner:

"The State of Texas, County of Hunt.

"Know all men by these presents: That we, Celeste State Bank as principal, and H. E. Jones, G. D. Henslee, J. S. Williams, Thos. I. Roach, as sureties; are held and firmly bound unto the Governor of the State of Texas, and his or her successors in office, in trust for the benefit of depositors having funds deposited with the principal herein, in the sum of thirty thousand and ——— dollars, payable as provided by the laws of Texas, at the time of the execution hereof, conditioned that the above bound Celeste State Bank will pay upon demand, or in accordance with the certificate of deposit, to the persons entitled thereto, all deposits in said bank at the date of this bond and all other deposits made therein during the period of one year from the date hereof. Upon payment of any sum or sums made obligatory by reason of the terms hereof, any surety making or participating in such payment shall thereby be subrogated to the rights of a depositor and entitled to assert such rights in accordance with the laws of the state, secondary and subject to the rights of all depositors secured by the terms hereof. This bond is executed as and of date June 26, 1926.

"In testimony whereof, the said principal has caused to be hereunto subscribed its aforesaid corporate name, the officer subscribing the corporate name of the principal hereto having been thereunto lawfully authorized so to do by a vote of said corporation, and in attestation thereof has caused its corporate seal to be hereunto affixed, and said sureties have also hereunto subscribed their names and affixed their seals as and of the day and date hereinbefore provided.

"[Signed] Celeste State Bank, Principal.
"[Seal.] [Signed] H. E. Jones, President.
"Attest: [Signed] J. W. Denny, Cashier.
"[Signed] H. E. Jones.
"G. D. Henslee,
"J. W. Williams,
"Thos. I. Roach."

On the 16th day of December, 1926, the bank was closed and its affairs passed into the hands of the banking commissioner for liquidation. This suit was filed by the Attorney General in the name of the Governor against the sureties on the above bond. Roach and Jones, two of the sureties, filed no answers. The appellee Henslee answered by a plea in abatement, general and special exceptions, and a general denial. He further specially pleaded the invalidity of the bond because of the unconstitutionality of the article of the statute which authorized its form.

The case was submitted to the court without a jury. After finding all the facts essential to support a judgment against the obligors on the bond, if it were a valid instrument, the court concluded as follows:

"I conclude but for the fact that in my opinion article 477 of the Revised Statutes of 1925 is unconstitutional, the plaintiff would be entitled to judgment against all of the defendants in this case. Being, however, of the opinion that said statute is unconstitutional, I deem it my duty to render judgment for the defendants; and judgment for the defendants is accordingly so entered."

In passing upon the questions here presented, it will be necessary to examine and consider other relevant provisions of the banking law which authorize state banks to adopt the bond security system. Those provisions are as follows:

"Art. 475. Each and every state bank or trust company now or hereafter incorporated under the laws of this state, which shall elect to come under the provisions of the bond security system of this chapter shall, on January 1, 1910, and annually thereafter, file with the banking commissioner of Texas, and his successors in office, for and on behalf of the lawful depositors of such bank, a bond, policy of insurance, or bonds of the United States, or municipal or district bonds approved by the Attorney General's Department, or other guaranty of indemnity in an amount equal to the amount of its capital stock, which said bond, policy of insurance or other guaranty of indemnity shall be for and inure to the benefit of all depositors. Such instrument and the security thereby provided shall be approved by the county judge of the county in which such business is domiciled, and banking commissioner of Texas, and shall take effect and be in force from and after it is approved and filed in the office of the banking commissioner of Texas. Every such corporation shall comply with the provisions of this chapter as herein provided, and every such corporation that may hereafter be incorporated shall comply with the provisions of this chapter as to the depositors guaranty fund plan or the bond security system, on filing its charter, before it shall be permitted to receive deposits. Provided that any bank or bank and trust company that may have elected to secure its deposits under the depositors guaranty fund provided for by this Act shall have the right, upon making and filing the bond hereby provided for, to change its system of doing business and its mode of guaranteeing deposits from the guaranty system to the bond security system, as provided by this chapter. Provided, that there shall be placed in all advertising of the bank operating under a bond or other indemnity as hereinabove provided, and on all stationery of said bank, a statement of the amount of the bond or other indemnity which said bank carries to protect its depositors."

"Art. 475a. Every such bond or policy of insurance or other guaranty of indemnity, filed as provided for in this chapter, shall secure depositors at the time said bond is filed and approved and all deposits made during the period of twelve months thereafter; provided, however, that said bond shall become void and of no force and effect upon the making, filing and approval of the next annual bond provided for under article 491, Revised Civil Statutes of 1911."

"Art. 477. The bond, policy of insurance or other guaranty of indemnity herein provided for shall contain the provisions as provided by law and shall be in such form as may be fixed and provided by the state banking board of the state of Texas."

"Art. 478. The security provided for herein may be divided into two or more bonds or other guaranties of indemnity, or any part thereof may be given in either of such forms of guaranty of indemnity. The aggregate of such security shall be equal to the total amount of security required in accordance with the provisions of this chapter."

"Art. 481. If the bond herein provided for shall be executed by personal obligation or security, then it shall be executed by at least three persons of financial responsibility and solvency, satisfactory to the authorities authorized to approve such bond."

"Art. 488. If any banking institution shall default in the payment of a lawful demand and shall so continue for a period of ninety days from the making thereof, and the obligation of such bond or other guaranty of indemnity is not discharged, the Attorney General, or any district or county attorney acting at his instance, shall bring suit upon such bond, policy of insurance or other guaranty of indemnity in the name of the Governor and for the benefit of all persons who may be beneficiaries thereof by reason of its terms and conditions. Such action shall be brought within one year from the date of the expiration of such bond or other guaranty of indemnity. Such suit shall be instituted in the district court of the county where such banking institution was located, or in any adjoining county, at the option of the Attorney General."

The proof shows that the instrument sued on is a form of bond prescribed by the banking board under the authority of article 477. The contention of the appellees is that article 477 is unconstitutional because it is an attempt by the Legislature to confer legislative powers upon the banking board, and for that reason the bond here under consideration is unauthorized and invalid.

There are really two questions presented. One is, does article 477 attempt to confer upon the banking board lawmaking powers? The other is, if it does, and if for that reason article 477 should be treated as a nullity, is there sufficient statutory authority remaining for the execution of the obligation sued on? It was evidently assumed by the

trial court that if the first question should be answered in the affirmative, then the second should be answered in the negative. We are not inclined to concur in that conclusion. Both questions, however, will be considered in the order above stated.

That the Legislature cannot confer legislative powers upon subordinate boards and commissions is now too well settled to require discussion. But is article 477 subject to that criticism? Does it seek to empower the banking board to make a law, or to do more than adopt a regulation to aid in the enforcement of the law which the legislature itself has enacted? It appears from other articles above quoted that the Legislature has authorized state banks to secure their depositors by any one or more of the following methods: By the execution of a bond with personal security, or by an insurance policy, or by pledging government bonds or bonds of certain municipal corporations. In this instance it is necessary to consider only the power to make a bond with personal security. It will be observed that the Legislature has itself designated the party to whom the bond shall be made payable, the amount of the bond, the number of sureties, and the terms and conditions of liability. The only matter it has committed to the board is the preparation of a standard form of contract which expresses in proper legal phraseology what the law requires. That may be done by the aid of the common-law rules applicable to the preparation of such obligations. The board could not, and did not, add any new terms or conditions to those prescribed by the Legislature. While the Legislature may not delegate to subordinate boards or commissions the power to make a law, it can authorize such agencies to make rules and regulations for the enforcement of a law which the Legislature itself has enacted. United States v. Grimaud, 220 U. S. 506, 31 S. Ct. 480, 55 L. Ed. 563; Abbott v. State, 106 Miss. 340, 63 So. 667; Interstate Commerce Commission v. Goodrich Transit Co., 224 U. S. 194, 32 S. Ct. 436, 56 L. Ed. 729; State ex rel. Martin v. Howard, 96 Neb. 278, 146 N. W. 689; 6 R. C. L. 178. The adoption of a standard form of contract was a mere regulation designed to more effectively enforce what the Legislature had provided.

Counsel for appellees have referred to several cases as supporting the judgment of the trial court. Among them are the following: Anderson v. Manchester Fire Assurance Co., 59 Minn. 182, 60 N. W. 1095, 63 N. W. 241, 28 L. R. A. 609, 50 Am. St. Rep. 400; O'Neil v. American Fire Ins. Co., 166 Pa. 72, 30 A. 943, 26 L. R. A. 715, 45 Am. St. Rep. 650; Dowling v. Lancashire Ins. Co., 92 Wis. 63, 65 N. W. 738, 31 L. R. A. 112; King v. Concordia Fire Ins. Co., 140 Mich. 258, 103 N. W. 616; Nalley v. Home Ins. Co., 250 Mo. 452, 157 S. W. 769, Ann. Cas. 1915A, 283. The

case of King v. Concordia Fire Ins. Co., decided by the Michigan Supreme Court, is a fair illustration of what these cases decide. In that case it is apparent from the terms of the Michigan statute quoted in the opinion of the court that the Legislature had conferred upon a board authority to prescribe terms and conditions not included in the law. In that respect the statutes considered differ from article 477 of our statute. Those decisions therefore furnish no precedent for holding that the Texas statute is invalid.

It is contended also that article 477 confers upon the banking board authority to determine what kind of security the banks shall give—whether a bond, an insurance policy, or a pledge of government and municipal bonds. We do not think the article is susceptible of that construction. It was the manifest intention of the Legislature to give the banks the right to choose which of these three forms of security they would adopt. Texas Bank & Trust Co. v. Austin, 115 Tex. 201, 280 S. W. 161. Article 477 does not undertake to destroy that option, and it does not appear that a different construction has ever been placed upon the article by the banking board.

But conceding that article 477 is invalid and should in this proceeding be treated as a nullity, we do not think it would follow that the contract sued on is also invalid. When a statute requires a bond to be executed as a condition for the exercise of some special right, or authority, it is not necessary that the statute also prescribe the form of the bond. A bond is a well-known species of contract, and need not be couched in any particular language. It is sufficient if the statute provides for a bond and specifies the particular terms and conditions required which distinguish it from common law obligations of the same nature. If article 477 should be eliminated entirely from the banking law, the provisions remaining would furnish the authority and all essential directions needed in the preparation and execution of a complete statutory bond. The form adopted in this instance appears to be in substantial conformity to the requirements of the law. It was executed voluntarily by the bank and its sureties for the purpose of obtaining the privilege of conducting a banking business. The patrons of the bank deposited their money on the faith of that bond as security. It now ill becomes the bank and its sureties to say that what they held out to depositors as a binding obligation in order to obtain their deposits is now a mere nullity. State v. Harper & Crow, 99 Tex. 19, 86 S. W. 920; American Surety Co. v. Tarbutton (Tex. Civ. App.) 248 S. W. 435.

For the reasons stated we think the trial court erred in his conclusions of law and that the judgment rendered should be reversed. Since the case was tried on its merits, and

all the facts essential to a recovery were found in favor of the plaintiff, judgment will be here rendered for the appellant for the full amount sued for.