Clementine vs. The State.

### ANNA J. CLEMENTINE vs. STATE OF MISSOURI.

1. Upon the trial of an indictment for keeping a bawdy house so as to become a common *nuisance*, it is competent to prove the character of the women who live and are lodged in the house, and the character and behavior, while there, of the men who frequent the house, and also the effects of the establishment upon the peace and good order, and consequent enjoyment of the neighborhood.

2. Upon the trial of an indictment for keeping a bawdy house, the refusal of witnesses who have frequented the house to answer questions in reference to the conduct of the inmates and visitors while there, upon the ground that they would degrade themselves, may be taken into consideration by the jury in making their verdict.

3. Where the transaction to which a witness is interrogated forms any part of the issue to be tried the witness will be obliged to give evidence, however strongly it may reflect on his character.

4. Before the credit of a witness can be impeached by proof of anything he has said in relation to the cause, a foundation must be first laid for such proof by first asking him whether he has said that which is intended to be proved.

## APPEAL from St. Louis Criminal Court.

### HALL, for plaintiff in error.

I. Evidence of the character of the females seen at the house of the defendant was illegal, and should not have been received against the defendant. Character is what the public think and express of, and concerning others, and is full of perils if it is to be received of crime. It would convict an asylum of Magdalens. It is unknown to the law.

II. The general peace and quiet of the neighborhood was not the subject of inquiry in the indictment. If they fomented broils throughout its precincts, could they be punished for it in this proceeding? Why, then, poison the minds of the jury with such evidence?

III. It is always proper and legal to show that a witness testified to the point, against whom he is called. Indifference or want of feeling in the same, is important elements of credibility. The court refused to allow their absence to be shown in the case of the witness Kennely. Nixe. vs. Boyse, 4 Leigh. 330.

IV. The court erred in refusing to tell the jury that opinions of persons as to the kind of house kept by defendant was no evidence. The point seems plain.

V. Moore and Mullanphy refused to answer certain questions because the answers would tend to disgrace them. The court erred in refusing to instruct the jury that such refusal was no evidence whatever against the defendant. The court in the instructions expressly makes it evidence. 1 N. & M. (N. P.) 382; 2 Cowen & Hill's notes 747.

The court erred in refusing to instruct the jury that the motives that induced persons to go to the defendants house were no evidence against her.

### LACKLAND, for defendant in error.

I. The court did not err in overruling the objections to questions asked of O'Blennis and Mawer respecting the general character of the inmates of the house for virtue.

The character of those who frequent a house charged with being a bawdy house, is a legit-

imate subject of inquiry. The indictment charges in so many words "that the defendant caused and procured persons of evil name and fame, and dishonest conversation to come together in her house." This allegation is a material one, and must be proven by positive testimony as to,the character of the inmates or by circumstantial evidence.

The court erred in refusing to compel the witness Mower to answer the questions put to him by the State.

The reason that the court gave, and the reason that he refused, did not in fact exist. He was asked if he was in any other room than the parlor? Whether he saw any men with the women, when he saw them going up stairs to bed? It is difficult for me to see how the answer of the witness to these questions would tend to disgrace him. Suppose he had answered the first question in the affirmative, how could that disgrace him? There is nothing disgraceful that I can see in the act of going into another room than the one he first entered upon entering the house, if it was no disgrace to enter the house at first, and the witness seems not to have looked upon the act of entering the first room as disgraceful, but gets remarkably tender footed after he gets into the parlor. If the action of the court in regard to this question be correct, then a bawdy house cannot be proven by those who frequent such places, which would render the statute defining the offence almost nugatory.

II. The second question the court should have compelled the witness to answer. Admitting that it was a disgrace to be seen with the women when they were going up stairs to bed, and also admitting that the law does not compel a witness to answer questions tending to disgrace him when he is upon a direct examination upon a matter material to the issue ; even then the court ought to have compelled the witness to answer the last question, because t answer to that question could in no wise implicate him. He was not asked whether he the man or one of the men, but whether he "saw any man with them." The answer to either affirmatively or negatively, could not implicate him, and therefore was no disgrace

The same reasoning seems to apply to the third question asked Mower, to wit: "Did ever stay all night in the house of defendant?"

The three questions asked of witness Bryan Mullanphy by the State failed to be answe for the same reasons, and if the court was right in its ruling upon these questions, it amo to this—that no witness can ever be compelled to say whether he has ever been at a ho charged as being a bawdy house.

The principle laid down by the court in the case of Ward vs. the State, 2 Mo. R. 98, is be lieved to be applicable to this question.

We now lay down the proposition, that admitting for the sake of argument that the answers to the above questions must necessarily disgrace witnesses, yet if they were upon examination in chief, which was the case, and the questions were relevant and material to the issue. a witness cannot refuse to answer for the reason that such answers will disgrace him. 1 Greenl. Ev. page 613, § 454, and authorities there cited.

III. The court did not err in overruling the objection to the questions asked the witnesses Charles. Kennerly, S. B. Targee and Hugh Miller, as to what effect the establishment of the defendant and the people resorting there had upon the peace and quiet of the neighborhood.

Nor did the court err in overruling the objection to the question asked the witness Kennerly, as to "whether what took place at defendant's house had any tendency to mar him in the enjoyment and use of his house and premises?"

At common law the "keeping of a bawdy house is a common nuisance, both on the ground of its corrupting public morals and of its endangering the public peace by drawing together dissolute persons." Hawk. P. C. V. 1, ch. 74, sec. 1; 5 Bac. Ab. nuisance, (A.)

At common law a bawdy was looked upon as a nuisance, and the keeper was punished as the creator and maintainer of a nuisance. It is true under our statute it is styled and prohibited by the term "bawdy-house," and not by the term "nuisance" ; and although we contend that a person may be guilty of the statutory offence, and not be guilty of the common law offence, yet if the State choose to go beyond the statutory and prove an offence at common law, that

Clementine vs. The State.

that the defendant kept a bawdy-house, and did so keep it that it was a common nuisance, cannot see what right the defendant has to complain.

IV. The court did not err in refusing to exclude the testimony of James Teel because he had remained in the court room during the examination of witnesses, contrary to the rule of court. This is a matter entirely in the discretion of the court. The court will not refuse to allow a witness to be sworn, or reject his evidence for such behavior, unless it appear that there had been collusion between the witness and the party calling him. Because, a witness by his own misbehavior should not be allowed to deprive the party calling him of his testimony, although he may be deserving of punishment for his misbehavior, as for a contempt. In support of this see 1 Stark Ev. p. 189.

V. The court did not err in sustaining the objection to question asked the witness Alexander Hare, because said question is wholly irrelevant.

VI. There was no error committed in giving or refusing instructions. All those refused contain either bad law, inapplicable to the case, or are embraced in the instructions given.

Birch, J., delivered the opinion of the court.

The defendant was indicted for keeping a common bawdy house, and the circumstantial testimony of the witnesses being deemed sufficient to justify her conviction, the verdict of the jury, upon that score, will of course remain undisturbed. The alleged error of the criminal judge, misdeclaring the law and misdirecting the jury, will constitute, therefore, the only question to be reviewed by this court.

It is complained of by the counsel for the defendant, that it was improper in the court to admit testimony respecting the character of the men who lived and were lodged in her house ; and that the testimony which was given respecting the character and behavior of the men who frequented the establishment, and its effects upon the peace and good order, and consequent enjoyment of the neighborhood, was in like manner irrelevant and improper.

These objections, are, in my opinion, sufficiently answered by the authorities to which we have been referred by the counsel for the State, as indeed an original answer would be readily suggested and applied, (upon general principles) from the *necessity* of the case, were it now for the first time presented for judicial consideration. The exemption from testifying with which, (in this case it was too broadly assumed) the law invests those who may probably be the only persons who can establish the fact *direct*, necessarily presupposes the admissibility of *circumstantial* testimony of the character objected to, of which it may be as well to remark here as elsewhere, that the refusal of various witnesses to testify in the case; upon the ground that answers to the questions which were propounded to them, would tend to their own degradation, might well be considered by the jury in making up their verdict.

Clementine vs. The State.

In this connection it may be proper more specially to remark, that an answer to several of the questions which were asked by the State, but to which the witness objected, might well enough have been enforced by the court; but, as in view of the affirmance of the judgment in this case, the points which have been made by the attorney for the State, are not necessarily here involved, we but add our concurrence in the establishment of the general modern doctrine, "that where the transaction, to which the witness is interrogated, forms any part of the issue to be tried, the witness will be obliged to give evidence, however strongly it may reflect on his character."

As the indictment expressly charges the keeping of this house to have been a "common nuisance" to the neighborhood; and as a bawdy house is so regarded at common law, "both on the ground of its corrupting public morals and endangering the public peace," and as such a nuisance might moreover be regarded as naturally resulting from the aggregate of circumstances with which it was proper the jury should be not only correctly acquainted, but also correctly impressed, we perceive no sufficient cause to reprehend the latitude of examination, both for and against the accused, upon the point in question.

Respecting the testimony given by the witness Teel, as the record does not show that what he stated was in the slightest degree prejudicial to the accused, but rather in her favor, we do not feel that it presents a case in which we are even called upon to revise the discretion which the criminal or circuit judge may always exercise in cases of like manner, however strong the testimony.

As it does not appear that in the manner of propounding the question to Kennerly; concerning his threats to destroy the defendant's property, a proper foundation was laid for calling a subsequent witness to contradict him, no witness could be properly admitted for that purpose; much less could one be called, and an answer put into his mouth, by the terms of the question asked him, as in this case. The rule, in such case, and the reasons for them are too familiar to need repetition.

As to the instructions, those given by the court having been sufficient for all the purposes of a fair and impartial trial, the finding and judgment cannot now be disturbed because others were refused. It is, therefore, in all things affirmed.