# Ex parte MAY LAYMASTER v. B. F. GOODIN, Sheriff.

## In Banc, July 14, 1914.

1. **CRIMES: Injunction: Nuisances.** All crimes are nuisances, but some nuisances are public and others private; and while a court of equity may use its injunctive powers to abate a public nuisance, a crime which is· only a private nuisance cannot be enjoined by a court of equity and the offender punished for contempt for a violation of the restraining order. Only courts of law can properly punish such a crime. [Distinguishing State ex rel. v. Canty, 207 Mo. 439; State ex rel v. Lamb, 237 Mo. 437.]

2. ———: ———: **Bawdy House.** A circuit court has no jurisdiction to issue a writ of injunction against a woman charged in the petition for the writ with "setting up and keeping a common bawdy house," and upon a hearing of evidence find that she has violated said writ and thereupon commit her to jail for contempt, since the offense was an ordinary crime, and not a public nuisance.

   GRAVES, J., concurs in the result, not on the ground that the keeping of a bawdy house is not a public nuisance but · because the petition asking for the injunction did not charge the woman's acts · to be a public nuisance and states no other grounds of equitable cognizance.

   BROWN, J., concurs in the conclusions reached, for the reason that in its injunction against the woman the State is attempting to substitute the equity practice for the criminal law, contrary to the Constitution, which ordains that all prosecutions for felonies or misdemeanors shall be by indictment or information, in which the accused shall be entitled to a trial by jury and to meet the witnesses against him face to face.

*Habeas Corpus.*

PETITIONER DISCHARGED.

*Irwin & Peters* for petitioner.

(1) The court should have sustained the demurrer to plaintiff's petition on the ground that a court of

equity has no jurisdiction to enjoin the commission of a crime, and neither has it jurisdiction to enjoin the maintenance of a bawdyhouse, or any other house not of a public character. State ex rel. v. Canty, 207 Mo. 455; State ex rel. v. Lamb, 237 Mo. 457. (2) It was the duty of the court to pass upon petitioner's application for a change of venue, and if it was found that all the requirements of the statute had been conformed to, then it became mandatory upon the court to grant such change. Douglas v. White, 134 Mo. 228; Railroad v. Mining Co., 139 Mo. App. 272. (3) There was no evidence that petitioner was conducting a bawdyhouse; the evidence was undisputed that she occupied her premises alone, aside from her negro servant girl; there was no evidence that any immoral conduct ever was engaged in at or upon the premises of petitioner; there was no evidence of the congregating of any idle, dissolute, lawless, turbulent and immoral persons of any kind whatsoever at or upon the premises of petitioner; there was no evidence that any loud or unusual noises emanated from her premises or that any condition whatsoever existed thereon that did or could have disturbed any one; therefore the court had no power or authority to punish her for something that was not a contempt of court either in law or in fact. In re Clark, 208 Mo. 121; State ex rel. v. Wear, 135 Mo. 265; People v. Kanvanaugh, 220 Ill. 49.

*James H. Lay* and *A. M. Hough* for respondents.

(1) When a public nuisance is involved no notice to the defendant is required, the State is the party interested then, the plaintiff in the cause. Likewise no bond can be required as a prerequisite to the granting of the temporary injunction. State ex rel. v. Lamb, 237 Mo. 437; State ex rel. v. Canty, 207 Mo. 439. (2) A court of equity cannot and will not enjoin the commission of a crime, but where, as frequently happens,

the thing done is not only an offense against the criminal laws of the State, but likewise has the elements of and is a public nuisance, detrimental to the public peace and happiness, good order, rights, public morals and decency, then the mere fact that it is also a criminal act has not, does not and ought not to deprive a court of equity of jurisdiction in such kind of cases. We cite the Canty case and the Lamb case as completely sustaining our position as above stated. Also, we cite the late case of State ex rel v. Feitz, 174 Mo. App. 456, following as it does the law as declared by this court in the Lamb and Canty cases. A bawdyhouse is a public nuisance *per se*. Clementine v. State, 14 Mo. 115; Givens v. Van Studdiford, 4 Mo. App. 503; Ashbrook v. Dale, 27 Mo. App. 650, 72 Mo. 129, 86 Mo. 156; State ex rel. v. Dykeman, 153 Mo. App. 416. (3) The right to a change of venue is statutory and the ruling of the circuit court, either for or against the application, can only be reviewed in one way, that is, by appeal, after excepting to the action and filing a term bill of exception. It is like any other erroneous ruling of the trial court, to be corrected on appeal or by writ of error. The mere filing of an application for change of venue does not divest the court of jurisdiction. Eudaley v. Railroad, 186 Mo. 399; State ex rel. v. Riley, 203 Mo. 175; In re Drainage Dist. v. Richardson, 227 Mo. 261. (4) Direct and positive evidence in bawdyhouse cases can rarely be obtained in a criminal prosecution for setting up, keeping and maintaining such places, and the same applies where it is sought to stop and abate such houses by injunction on the ground that they are a public nuisance. The evidence of witness Schultz and other witnesses showed what the character and reputation of the houses had been for many years, and that they had been occupied for years by prostitutes and used as bawdyhouses, and were known in Jefferson City as such houses, and the evidence showed petitioner to be a prostitute and

bawd. Clementine v. State, 14 Mo. 112; State v. Bean, 21 Mo. 267; State v. Bernard, 64 Mo. 260; State v. Dudley, 56 Mo. App. 450.

WOODSON, J.—This is an original proceeding— *habeas corpus*—filed in this court by the petitioner, asking to be discharged from a sentence of ten days imprisonment in the county jail, imposed by the circuit court of Cole county, for the violation of a temporary injunction issued by it against her on the ——— day of ———, 1913, "for setting up and keeping a common bawdyhouse" in Jefferson City, Missouri.

The facts are substantially as follows:

On July 19, 1913, the prosecuting attorney of Cole county filed in the office of the clerk of the circuit court thereof, an information charging the petitioner "with setting up and keeping a common bawdyhouse."

This information was filed in vacation of the court, and the cause was tried at the July term, 1913, of the court, which resulted in a mistrial. At the November term thereof she was again tried and acquitted by a jury.

During the interim of the mistrial and the acquittal the prosecuting attorney filed in said court a petition asking that the petitioner herein be enjoined from conducting a common bawdyhouse in said city.

Without notice to petitioner the circuit court granted a temporary injunction, as prayed, without bond, and set the case down for trial at the November term, some four months subsequent, but she had in the meantime been notified of the issuance of the temporary order.

At that term of court the petitioner filed a demurrer to the petition asking for the injunction, which was by the court overruled at the March term, 1914.

Thereupon the petitioner filed answer; but subsequently filed a motion for a change of venue of the cause from Cole county, on account of the prejudice

of the judge thereof. This motion was overruled, as I gather it, because of some informality in the application.

Thereupon, a second motion in proper form for a change of venue was filed, which was also overruled.

In the meantime the prosecuting attorney had duly filed in court an application requesting that the petitioner herein be cited for contempt of court, for the alleged violation of the temporary injunction previously issued in the injunction case.

On March 21, 1914, the court took up the citation for contempt and after hearing much evidence pro and con regarding the said violation of the temporary injunction, took the case under advisement until the 30th, and then found her guilty, and sentenced her to imprisonment in the county jail for ten days, and ordered the issuance of a committment, etc., which the sheriff proceeded to execute, when the petition for the writ in this case was applied for and issued, under which the marshall of this court released her from custody on bond, etc.

I. Counsel for respondent raise a question as to whether or not the bill of exceptions was properly and timely filed.

Without going into that question I will state that in my individual opinion it was neither properly nor timely filed to preserve the questions attempted to be here presented thereby.

II. But the record proper is correctly before this court; and it appears from the petition filed that the petitioner was charged in the petition for

**Crimes:**
**Injunction:**
**Nuisances.**

the injunction with ''setting up and keeping a common bawdyhouse in Jefferson City, Missouri,'' and the judgment of the court finding her guilty of contempt, etc.

This charge, finding and judgment simply convicts the petitioner of the ordinary crime of setting up and keeping a bawdyhouse. [State ex rel. v. Canty, 207 Mo. 439, and cases cited.]

Counsel for respondent rely not only upon the case just cited, but also upon the case of State ex rel. v. Lamb, 237 Mo. 437, as authorities supporting their position in this case. They are not in point.

By an examination of both of those cases it will be seen that it was alleged and proven according to the majority opinion of the court, that not only a crime was being committed, as here, but also that the business complained of was so vile, open, notorious and vicious, that bad and dangerous men, in large numbers, were attracted thereto; even criminals were constantly congregated there, to the great detriment of the peace and safety of the community. In other words, those cases hold that a public nuisance, even though a crime, may be enjoined by a court of equity, though having no criminal jurisdiction, not because of the crime, but because of its inherent and constitutional authority to abate such nuisances.

There is no doubt but what a court of equity has this power, and it should be exercised freely whenever the exigency of the case demands, yet it should not invade the province of the criminal courts of the country, which must try criminals with the assistance of a jury, according to the Constitution and laws of this State, and country generally.

The differentiation of this case from those is, that while all crimes are nuisances, yet they are not necessarily public nuisances. A court of equity may abate the latter, but the courts of law only can properly punish the former. Some of the States have enacted statutes conferring jurisdiction upon courts of equity in both classes of cases, but this is not one of them. It still preserves the right of one charged with this class

of crime, as in most all others, to be tried by a jury of his peers.

Great pains were taken in the case of State ex rel. v. Canty, supra, to point out and distinguish the difference between these two classes of cases, and after further consideration I am unable to make that demarcation any plainer by anything I might here add.

No lawyer or judge differs as to the law governing these two classes of cases, but the trouble the courts have had, and I presume always will have, is to determine from the facts of each particular case to which class it belongs. The line of demarcation between the two is often so narrow that it becomes exceedingly difficult to follow it in many complicated and intricate cases; but fortunately for the court, this is not of that character. The petitioner was charged and found guilty of setting up and keeping a common bawdyhouse, which according to all of the authorities, in the absence of statute, is an ordinary crime, but not a public nuisance in any sense of the term.

——:
——:
Bawdy
House.

A court of equity having no jurisdiction over the subject-matter of this cause, it necessarily follows, under the laws of this State, that the circuit court of Cole county had no authority to try and imprison the petitioner for the crime stated in the petition for the injunction. [State ex rel. v. Williams, 221 Mo. 227.]

If we are correct in this view of the law of the case, then the circuit court of Cole county sitting in equity, had no jurisdiction to enjoin the petitioner from committing the crime of keeping a common bawdyhouse. That crime, if the petitioner is guilty of it, can be promptly and adequately punished under the criminal laws of the State, which were enacted expressly for that purpose, and there is, therefore, no necessity to resort to the extraordinary powers of a court of equity to suppress such a well-known and common crime.

So believing, I am of the opinion that the petitioner should be discharged; and it is so ordered.

*Walker* and *Faris, JJ.*, concur; *Graves* and *Brown, JJ.*, concur in separate opinions; *Lamm, C. J.*, and *Bond, J.*, dissent.

## CONCURRING OPINION.

BROWN, J.—I concur in the conclusions reached by my learned brother WOODSON, for the reason that in its suit against the petitioner the State is seeking to substitute the equity practice for the criminal law —a thing which the Constitution does not permit. A party whose property is being injured or destroyed by the criminal acts of another may enjoin such criminal acts, notwithstanding to do so amounts to enjoining the commission of a crime. [State ex rel. v. Schweickardt, 109 Mo. 496; State ex rel. v. Feitz, 174 Mo. App. 456.] Nevertheless it is not the theory of our organic law that the liberty of even the humblest citizen may be taken away without a compliance with section 12, article 2, Constitution of Missouri, which ordains that all prosecutions for felonies and misdemeanors shall be by indictment or information; in which the accused shall be entitled to a trial by jury. [Sec. 28, art. 2, Constitution of Missouri.] In such trial the accused has the right to meet the witnesses against him "face to face." [Section 22, art. 2, Constitution of Missouri.] This last clause of our organic law means that witnesses having personal knowledge tending to prove defendant's guilt must confront him in court, and a conviction cannot stand upon the evidence of witnesses who have only heard rumors of defendant's guilt. A mere rumor has no *face,* and cannot be "confronted" by anybody within the purview of our Constitution. [State v. Wellman, 253 Mo. 302, l. c. 315.]

Before the constitutional safeguards above noted can be cast into the scrap-heap the people must amend their organic law.

## SEPARATE CONCURRING OPINION.

GRAVES, J.—I concur in the result reached by our brother Woodson in this case, but am not certain that I follow all of his reasoning. That my position may not be misunderstood I prefer to state it in my own way. The bill in equity involved in this case is one which simply charged the defendant therein, the petitioner herein, with "setting up and keeping a common bawdyhouse in Jefferson City, Missouri." Upon this petition the temporary injunction was granted, and for the violation of which petitioner was deprived of her liberty. To my mind the trouble with this petition is that it states no cause of equitable cognizance, but as I see it, not for the reasons stated by my brother.

I adhere strictly to the rule announced in State ex rel. v. Canty, 207 Mo. 439, and State ex rel. v. Lamb, 237 Mo. 437. I do not understand those cases to say that a court of equity will enjoin a crime, but they do announce the doctrine that when a given state of facts shows a public nuisance, then a court of equity will enjoin the doing of the acts which make up and constitute the public nuisance, although such acts or some of them may within themselves be crimes.

Now at common law the mere maintenance of a bawdyhouse was a public nuisance. Thus in 14 Cyc. 484 it is said: "A bawdyhouse was a public nuisance at common law, because it drew together lewd and debauched persons, thus tending to disturb the peace and to increase immorality among the people."

By statute it has been made a crime, but the making of it a crime has not destroyed its character as a public nuisance, and therefore the jurisdiction of equity over it as a public nuisance. At the instance of the

State, through its law officers, public nuisances may be abated, as can private nuisances at the instance of the individual.

But all this does not help the State in this case. The petition for equitable relief should have averred in direct terms that the defendant was maintaining a public nuisance, but the term ''public nuisance'' is not found therein. On the other hand the criminal name for the act is used throughout. It may appear to be a refinement to say, that in law the keeping of a bawdy-house is a public nuisance, and yet say that a petition in equity which says the defendant is keeping a bawdy-house does not charge her with maintaining a public nuisance. But when we consider the fact that equity can only take hold of the subject upon the theory of there being a public nuisance, it is clear that the charge in the bill should specifically aver a public nuisance. This of course should be followed by specifications. The bill in this case, upon which the temporary injunction was granted, does not so charge, and therefore stated no cause in equity.

*James H. Lay* and *A. M. Hough* for respondents.