State ex rel. Orr v. Kearns.

---

THE STATE ex rel. CAMERON L. ORR, Prosecuting Attorney, v. LEANNAH KEARNS, *Alias* ANNIE CHAMBERS, Appellant.

Division One, July 31, 1924.

1. **PLEADING: Nuisance: Bawdyhouse: Irreparable Loss of Property Rights.** A petition to enjoin the defendant from maintaining a nuisance by conducting or keeping a bawdyhouse, which charges her with causing "large numbers of lewd, lascivious, immoral and dangerous men and women to frequent" the premises described "and to congregate therein at all hours of the day and night for immoral purposes," which acts "render said place and premises dangerous to the peace, safety, good morals and health of the public," charges what is declared by the statute to be a nuisance, and a demurrer thereto asserting that it states no cause of action in equity, in that it does not allege that irreparable loss of property rights will ensue if the alleged nuisance is not abated, is properly overruled, for it is not necessary that the petition should so state.

2. ———: ———: ———: **Acts Constituting a Crime.** The fact that the acts of the defendant, and her uses of the property, constitute both a crime and a nuisance, does not divest a court of equity of jurisdiction to enjoin her from using the property in such a way as to maintain a nuisance.

3. **NUISANCE: Sufficient Evidence.** The relevant evidence set forth in the opinion was amply sufficient to support a finding that defendant was maintaining a nuisance as charged.

4. ———: **Evidence: Reputation Preceding Legislative Act: Ex Post Facto Law.** Testimony of defendant's reputation covering a period of thirty or forty years and continuing down to the time the suit was filed, charging her, under the Act of 1921, with maintaining a nuisance, as the keeper of a bawdy and assignation house, did not give retrospective operation to the act, or make it *ex post facto* in effect. The defendant could acquire no vested right to violate the law, and evidence of the reputation of the keeper of a house, which as maintained by defendant is charged to be a nuisance, and of its inmates and frequenters, if continued down to the time the charge is made, is always admissible.

5. ———: ———: **Disregarded on Appeal.** A suit to enjoin defendant from maintaining a nuisance being equitable in its nature, the appellate court may disregard testimony objected to as incompetent, and hold that the other relevant evidence is sufficient to support the findings made by the trial court.

6. ———: **Injunction: Twice in Jeopardy.** The act (Laws 1921, p. 523) making the maintenance of a bawdy or assignation house a nuisance and authorizing circuit courts to enjoin the same does not, in that it subjects the keeper of such a house to double punishment, first for a violation of the criminal statute and again for a violation of the decree enjoining the offense, violate the provision of either the Federal or State Constitution declaring that no person shall be subject for the same offense to be twice put in jeopardy of life or limb. The keeper of such a house has no constitutional right to violate the injunction, basing the violation upon her liability to criminal prosecution for the act or acts that would constitute a violation of the injunction.

7. ———: **Self-Incrimination.** Immunity from self-incrimination is available before any tribunal, in any proceeding. The Act of 1921, authorizing the circuit court to enjoin the maintenance of a nuisance, although the acts constituting the nuisance may also constitute a crime, does not create a situation which requires the defendant to testify against herself in the criminal action, in violation of her constitutional right, on the theory that, perchance,

State ex rel. Orr v. Kearns.

the plaintiff in the injunction suit may take her testimony and use it in a subsequent criminal prosecution.

8. ———: **Punishment Without Jury Trial: Due Process.** The fact that a court of equity is by the statute (Laws 1921, p. 523) given power to declare certain acts of defendant constitute a nuisance and to deprive her of the use of her dwelling house for a reasonable time, and to punish her for a violation of the injunctive decree, without a trial by a jury, does not deprive her of her liberty without due process of law, or deprive her of any other constitutional right. The provision providing punishment for a violation of the injunction is declaratory or the giving of a power of a kind which has always existed, and has always been exercised by courts of equity in the abatement of nuisances, and that power the legislature, in the exercise of the police power of the State, could enlarge and extend to bawdy houses without transgressing upon any constitutional right to a trial by jury.

9. ———: **Punishment of Crime by Civil Action.** The Act of 1921, authorizing a court of equity to abate as a nuisance the maintenance of a bawdy house by injunction, does not violate constitutional rights by providing for punishment of crime by civil action and for the enforcement of the criminal law by injunctive process. The State has power to declare that any place kept and maintained as a house of prostitution shall be deemed a nuisance, and be abated by a court of equity, and also to declare such acts to be a crime and to provide for the indictment, trial and punishment of the guilty offender. One is a proceeding against the property used for a forbidden purpose, and the other is for the punishment of the offender.

10. ———: **Penalty: Delegation of Legislative Power: Closure of House for ''Reasonable Time.''** The Legislature cannot delegate to courts power to make the law; but it can confer on courts power to execute the law, and prescribe penalties within prescribed limits as a means of making its judgments effectual. But to delegate power to courts to fix an unlimited penalty is unauthorized by the Constitution. The Act of 1921 (Laws 1921, p. 523), declaring that the keeping and maintenance of a bawdy house is a nuisance, and giving to the circuit court power to abate the nuisance by injunctive process, was not a delegation of legislative power; but in declaring that the court "in abating any such nuisance may order such house closed for a reasonable length of time as seems just and wise to the court," it was a delegation of legislative power to the court. It fixes no definite time during which the closure order shall operate, and fixes no measure or standard by which what is to be considered a reasonable time is to be determined other than the opinion of the court, and therefore it leaves

to the court the power to exercise a legislative discretion and make the law in each case. It therefore, as to the essential element of the duration of the closure order, violates Article III of the Constitution.

11. ———: ———: ———: **Other Parts Valid: Judgment.** The rejection of that portion of the Act of 1921 authorizing the court to order the house, whose maintenance has been adjudged to be a nuisance, closed "for a reasonable length of time," does not render the rest of, the act invalid, for with that portion eliminated there remains a complete law authorizing a perpetual injunction against the prohibited use, and its enforcement by punishment for its violation. Likewise so much of the judgment as constitutes a perpetual injunction against the use of the premises for the maintenance of a bawdy house should be affirmed, and only so much as closes the house against any use whatsoever should be reversed.

Headnotes 1 to 4: **Nuisances:** 1, 29 Cyc. 1241; 2, 29 Cyc. 1221; 3, 29 Cyc. 1247; 4, 29 Cyc. 1245. Headnote 5: **Appeal and Error,** 4 C. J. sec. 2580. Headnote 6: **Criminal 'Law,** 16 C. J. sec. 443 (1926 Anno). Headnote 7: **Witnesses,** 40 Cyc. 2540. Headnote 8: **Juries,** 35 C. J. sec. 31; **Constitutional Law,** 12 C. J. sec. 981 (1926 Anno). Headnote 9: **Nuisances,** 29 Cyc. 1221 (1926 Anno). Headnote 10: **Constitutional Law,** 12 C. J. secs. 346, 355 (1926 Anno). Headnote 11: **Statutes,** 36 Cyc. 983; **Appeal and Error,** 4 C. J. sec. 3214.

Appeal from Jackson Circuit Court.—*Hon Allen C. Southern,* Judge.

REVERSED AND REMANDED (*with directions*).

*J. Francis O'Sullivan* for appellant.

(1) The action cannot now be maintained because said act is violative of Article III, and of Section 30 of Article II, of the Constitution of Missouri, because the penalty provided by the act is wholly within the discretion of the courts, and thereby a legislative power is conferred on the courts. (a) The portion of the act authorizing closing of a building or place for a reasonable time is penal. Laws 1921, pp. 523-524; State v. Warner, 197 Mo. 650; United States v. Eilert Brewing & B. Co., 279 Fed. 659; 30 Cyc. 1329. (b) Conferring on the court the power to assess a penalty not fixed with-

in certain limits is a delegation of legislative functions to the courts; is violative of Article III of the Constitution, and the imposition of any penalty thereunder is violative of Section 30, Article II, of the Constitution. Young v. Railroad, 227 Mo. 317; Ex parte Dusenbury, 97 Mo. 504, 508; Morgan v. Ward, 224 Fed. 698; In re O'Shea, 11 Cal. App. 568; Sheldon v. Hoyne, 261 Ill. 222; Arnett v. Cardwell, 135 Ky. 14; Stimpson v. Pond, 2 Curtis, 502; In re Bonner, 151 U. S. 259. (2) The court erred in admitting evidence of acts and conditions and reputation of premises, existing prior to the date the act became effective, because by the admission and consideration of such testimony the court gave retrospective and retroactive effect to the act, and permitted same to become *ex post facto* in operation, in violation of Sec. 15, Art. 10, Constitution of Missouri, and clause three, Sec. 9, Art. 1, Constitution of the United States. Jamison v. Zausch, 227 Mo. 406; Bartlett v. Ball, 142 Mo. 28; Reed v. Swan, 133 Mo. 100; State ex rel. v. Wofford, 121 Mo. 61; City of St. Louis v. Clements, 52 Mo. 133; Ins. Co. v. Flynn, 38 Mo. 438; Fowler v. City of St. Joseph, 37 Mo. 228; Cunningham v. Gray, 20 Mo. 170; Deland v. Platte County, 54 Fed. 832; Cummings v. Missouri, 4 Wall. (U. S.) 277, 324; Kring v. Missouri, 107 U. S. 221; Burgess v. Salmon, 97 U. S. 381; Buckholts v. Buckholts, 24 Ga. 238; Scott v. Scott, 6 Ohio, 534; Given v. Marr, 27 Me. 212; Sheburne v. Sheburne, 6 Me. 210; Buck v. Dowley, 82 Mass. 555; Atlaquin v. Fish, 46 Mass. 140; Manning v. Inhabitants Fifth Parish, 23 Mass. 6; Greenlaw v. Greenlaw, 12 N. H. 200. (3) The demurrer to the petition should have been sustained because on its face, it stated no cause of action and disclosed a lack of jurisdiction in equity. (a) At no place in the petition was there alleged that any irreparable damage to property rights would ensue if the alleged nuisance therein enjoined was abated, and without such allegation, courts of equity had no jurisdiction. State ex rel. v. Woodfolk, 269 Mo. 389; Herelson v. Taylor, 281 Mo. 383; Magel v.

Society, 203 Mo. App. 335. (b) The petition merely alleges that there was no adequate remedy at law, and when attacked by a motion to make more definite and certain, this conclusion should not have been permitted, as the facts disclosed upon the face of the petition showed there was an adequate remedy at law, by a prosecution under the criminal statute. Attorney-General v. Uhrig, 14 Mo. App. 413; Schloss v. Dattilo, 197 Mo. App. 656; Rice v. Jefferson, 50 Mo. App. 464; State v. Ehrlick, 65 W. Va. 700; State v. Vaughan, 81 Ark. 117. (4) The act under which the injunction is sought is unconstitutional and void for the following reasons, all of which are set out in the pleadings and are contained in the declarations of law asked by appellant, and refused by the court over the exceptions of appellant: (a) The act is violative of the Fifth Amendment of the Federal Constitution and also of Section 23 of Article 2 of the Constitution of Missouri, in that it subjects appellant here and others in like circumstances to being twice tried and convicted for the same offense, once for the violation of the criminal statute and a second time for the violation of the civil decree, enjoining the commission of the same offense; and further that the act provides a means of requiring defendants in such actions to testify against themselves in criminal actions, in that plaintiff in the injunction suit may take defendant's testimony by deposition and use the same against a defendant in the criminal case involving the same subject-matter. Heddon v. Hand, 5 A. L. R. 1463; State v. Anderson, 40 N. J. L. 224; State v. Rodgers, 90 N. J. L. 60; Carleton v. Rugg, 149 Mass. 550, 5 L. R. A. 199. (b) The act is violative of the Fourteenth Amendment of the Federal Constitution in that the rights, privileges and immunities guaranteed under said amendment are taken from appellant without due process of law, in that she could be punished by imprisonment for a violation of an injunction, without any charge being made against her and without her being tried by jury.

*Jesse W. Barrett,* Attorney-General, and *Allen May,* Special Assistant Attorney-General,.for respondent.

(1) .The statute is a legitimate exercise of the police power, as recognized heretofore under other circumstances. Union Cemetery Assn. v. Kansas City, 252 Mo. 466, 502; State v. Tower, 185 Mo. 79; State v. Railroad, 239 Mo. 196; St. Louis Gunning Adv. Co.' v. St. Louis, 235 Mo. 99; State v. Bixman, 162 Mo. 1; State v. Layton, 160 Mo. 474. (2) The Legislature may legitimately declare that to be a nuisance which is not such *per se* or at common law. State v. Tower, 185 Mo. 79, 91; State ex rel. Rhodes v. Saunders, 66 N. H. 39, 18 L. R. A. 646; Marvel v. State ex rel. Morrow, 127 Ark. 595, 5 A. L. R. 1458; Littleton v. Fritz, 65 Iowa, 488; 54 Am. Rep. 19; State v. Marshall, 100 Miss. 626; State ex rel. v. Gilbert, 126 Minn. 95. (3) Courts of equity have always had jurisdiction to abate nuisances. State ex rel. v. Canty, 207 Mo. 439, 456; State ex rel. v. Lamb, 237 Mo. 437, 456; Ex parte Laymaster, 260 Mo. 613, 618; Mugler v. Kansas, 123 U. S. 623, 31 L. Ed. 205; Grossman v. United States ex rel. Brundage, 280 Fed. 683. (4) The Legislature, therefore, may lawfully extend that jurisdiction to nuisances created by a statute, specifically bawdyhouses, disorderly houses and houses of ill fame. Williams v. State, 150 Ga. 480; State ex rel. Wilcox v. Ryder, 126 Minn. 95; Ridge v. State, 206 Ala. 349; People ex rel. Bradford v. Barbiere, 33 Cal. App. 770; People ex rel. Thrasher v. Smith, 275 Ill. 256; Gregg v. People, 65 Col. 390; Chase v. Revere House, 232 Mass. 88; State ex rel. English v. Fanning, 97 Neb. 224; King v. Com. ex rel. Smith, 194 Ky. 143; Wind v. State, 102 Ohio St. 62; State ex rel. Ford v. Young, 54 Mont. 401; State ex rel. Kern v. Jerome, 80 Wash. 261. (5) Statutes of this character do not violate constitutional provisions by providing for punishment of crimes by civil action. The action is addressed, not to the wrongdoer, but the property used in the wrong doing. Mugler v.

Kansas, 123 U. S. 623, 31 L. Ed. 205, 214; State v. Marshall, 100 Miss. 626; Littleton v. Fritz, 65 Iowa, 488; Fulton v. State, 171 Ala. 572; Chase v. Revere House, 232 Mass. 88; Gregg v. People, 65 Cok. 390; Williams v. State, 150 Ga. 480.   (6) Such statutes do not violate constitutional provisions giving citizens immunity from furnishing evidence against themselves. Such immunity can be claimed at any time in any proceeding.   State v. Blackburn, 273 Mo. 469, 482; State v. Young, 119 Mo. 495, 520; State v. Naughton, 221 Mo. 398; Ex parte Gauss, 223 Mo. 277, 135 A. S. R. 517; Ridge v. State, 206 Ala. 349. (7)   Statutes of this character which give the defendant a judicial hearing in a court of equity do not in any regard transgress the due process clauses of either the State or Federal Constitution.   Mugler v. Kansas, 123 U. S. 623, 31 L. Ed. 205; Fulton v. State, 171 Ala. 572; State ex rel. Atty.-Gen. v. Stoughton Club, 163 Wis. 362; Ridge v. State, 206 Ala. 349; Williams v. State, 150 Ga. 480.   (8)   The case being one of equitable jurisdiction, a class of cases in which the right of trial by jury has never obtained, no constitutional right of defendant was denied in failing to accord her a jury trial.   State ex rel. v. Canty, 207 Mo. 439, 461; Mugler v. Kansas, 123 U. S. 623, 673, 31 L. Ed. 205, 214; City of St. Louis v. Stern, 3 Mo. App. 48; Chase v. Revere House, 232 Mass. 88; Williams v. State, 150 Ga. 480.   (9)   No allegation of irreparable damage to property is required or essential to the sufficiency of a petition for the abatement of a public nuisance.   Irreparable damage to public health, morals and safety is of as much concern to the courts as like damage to property, and a sufficient basis for equity jurisdiction.   State ex rel. v. Canty, 207 Mo. 439, 459; Littleton v. Fritz, 65 Iowa, 488, 54 Am. Rep. 19.   (10)   Evidence of the general reputation of an establishment and of its inmates is competent upon a proceeding to establish the existence of a bawdyhouse; this exception to the hearsay rule being

a rule of necessity from the nature of the proceeding. Clementine v. State, 14 Mo. 112.

LINDSAY, C.—This proceeding was instituted on June 27, 1921, by the Prosecuting Attorney of Jackson County, in the circuit court of that county, under the provisions of the act approved March 28, 1921. [Laws 1921, p. 523]. An injunction was granted perpetually restraining the defendant from maintaining a nuisance by conducting or keeping a bawdyhouse or house of assignation, upon certain premises owned by her, situated on West 3rd Street in Kansas City, and also directing the closing of the premises and keeping them closed from use for any purpose, for a period of two months; and from the judgment, the defendant has appealed.

A demurrer to the petition was overruled, and upon that it is urged here that the petition stated no cause of action in equity, in that, there was no allegation that irreparable loss to property rights would ensue if the alleged nuisance was not abated. It was not necessary that the petition should so state. [State ex rel. v. Canty, 207 Mo. 439.] The petition pleaded fully the facts showing the nature of the business carried on by the defendant, and the use of the premises, as constituting what was declared by the act to be a nuisance, and charges the defendant with causing "large numbers of lewd, lascivious, immoral and dangerous men and women to frequent said premises and to congregate therein at all hours of the day and night for immoral purposes," which, it is alleged, "renders said place and premises dangerous to the peace, safety, good morals and health of the public." In State ex rel. v. Woolfolk, 269 Mo. 389, cited by appellant, it is said at page 395: "The power of equity to enjoin the doing of acts threatening irreparable injury to property rights or *which would constitute a public nuisance,* is inherent and has been exercised, both in England and America, by courts of chancery since their evolution as

*Sufficient Petition.*

a distinct tribunal, nor can this power be divested because the performance of *such* acts may be a violation of the criminal law. On the other hand a court of equity is powerless to enjoin the commission of any crime not violative of property rights nor involving the creation of a public nuisance, for the reason that it has no jurisdiction to enforce the criminal law nor to prevent the performance of any act of a criminal nature which does not necessarily prejudice private or public rights subject to its jurisdiction and control.'' There is nothing said to the contrary in Harelson v. Tyler, 281 Mo. 383, which was a case involving private interests only, and which is also cited by defendant upon this point.

Objection is further made that while the petition stated that the plaintiff had no adequate remedy at law, the facts disclose that there was an adequate remedy at law, by prosecution under a criminal statute. This objection is made upon and in connection with the overruling of defendant's motion to require the petition to be made more definite and certain in respect of the reasons why the plaintiff had no adequate remedy at law. But, this is a case wherein the acts constituting the nuisance to be abated are defined by the law; the remedy is expressly authorized by the same law; and by the same law, the court is vested with jurisdiction to apply the remedy. The fact that the acts of defendant, and her uses of the property as charged, constituted both a crime and a nuisance, did not divest the court of jurisdiction. [State ex rel. v. Canty, 207 Mo. 459; State ex rel. v. Lamb, 237 Mo. 437.] The acts charged constituted not only a crime, but also a nuisance by express legislative enactment, and the facts charged were such as constituted a public nuisance under the common law. [14 Cyc. 484; Clementine v. State, 14 Mo. 112.]

It is urged that there is no evidence in the record to support the finding of facts and the judgment rendered

*Crime.*

**Sufficient Evidence.** thereon. The trial court made a finding of facts, which after reciting the ownership and possession by defendant on the day charged and long prior thereto of certain real estate particularly described, further found:

"That there was at all of said times located on said property a two-story building, divided into rooms, used, occupied, furnished and equipped as bedrooms, dance halls, reception halls, dining room, as described in the first amended petition filed herein; that the defendant had on June 27, 1921, and long prior thereto, unlawfully established, kept, permitted and maintained on said premises in Kansas City, Jackson County, Missouri, a bawdy-assignation house, and place of prostitution; that said defendant was on said date using said premises and property, furniture and equipment therein, for the purpose of keeping and harboring lewd, immoral and lascivious women therein, and permitting and requiring said women so harbored therein to receive and entertain men in rooms in said house and building for the purpose of unlawful sexual intercourse, assignation and prostitution, and for immoral purposes and conduct; that said defendant was on said date guilty of establishing, keeping permitting and maintaining a nuisance on said above described premises in Kansas City, Jackson County, Missouri, and that said buildings, erection, house and place of prostitution, established, kept, conducted, permitted, carried on, maintained and continued as aforesaid, are nuisances, and should be enjoined and abated, as prayed for in plaintiff's first amended petition."

The defendant testified: She had owned the property about forty-eight years. For about forty years or until in the year of 1913, she had used the property in conducting a bawdyhouse. She denied that after 1913 she had done so. The evidence in the record as to the character of the house, its contents and furnishings, its inmates, and other circumstances was in the main given by certain police officials who entered the house on the

afternoon of June 24, 1921. The house is described as a large one, having a somewhat fancy Japanese front, and having a chain on the front door to prevent forcible entrance. Next to the entrance, on the right, were two large parlors furnished with numerous heavily upholstered leather chairs. Back of these was a large ballroom with mirrors upon two sides, extending from the floor to a height of seven or eight feet. In this room there was a painting of an almost nude woman with lights over the top of the frame, and there was a piano and also a victrola in the room. The dining room was large, and with a table capable of seating twenty or twenty-five persons. In the kitchen was an ice box about six or eight feet in height and width, by four feet deep. In this were found several cases of dealcoholized Budweiser and dealcoholized Virginia Dare wine. In the defendant's room were found several whisky glasses, and a bottle containing a small quantity of whisky. There were several bedrooms on the first floor, and twelve or fifteen bedrooms on the second floor, each containing a bed completely furnished. Each room had a wardrobe, but most of these contained no clothes. Upon the wall in each was an oscillating electric fan. Upon the wash stands in each of the rooms were found bottles containing prefume, or disinfectants, lysol or the like. The house was not in a residence district and did not have the appearance of an ordinary home. When the officers entered, about three o'clock in the afternoon, they found there, besides the defendant, seven or eight white women, one white man, one colored man and two colored women. Three girls were found in a telephone booth, the door of which was locked. A colored maid had the key. One girl was found under a bed. One was found out on the roof about half an hour after the entrance of the officers. She had escaped through the bath-room window. She was the only one dressed in street clothes. All of the others wore kimonos, or silk robes highly colored and flowered, and all of these girls are described as

being "all painted and powered up." One witness testified as follows:

"Q. When you got upstairs what did you find up there? A. Found several girls in the rooms with silk garments on and different colors.

"Q. Bright? A. Bright colors, yes, and in one room we found a man and woman. This man was on the bed in his B. V. D's and this girl didn't have any-thing on but a teddy bear."

Another witness testified: "I went in the rear room and there was a girl in there and a man by the name of Wright, I believe. The girl was all naked except—what do you call them—'teddy bears?'—The man practically had his pants on when I got in there. He had a chance to dress."

The testimony of the first of these witnesses was that when he started to go into the room where the man and woman were found, the defendant took hold of him and attempted to prevent him from going into that room. The defendant denied this. There was testimony that several times while the officers were in the house, there were knocks at the front door, and each time the defend-ant called out, "The officers are here."

The defendant in her testimony explained the pres-ence of the women in her house by saying that they were there at a card party given by a young woman who lived with her. She admitted that several of these women were women who had been inmates of her house at a former time, when, as she admitted, she was keeping an assignation house. She explained the presence of the man in the room by saying that he had been drinking, and the colored maid had put him to bed; and explained the presence of the woman in that room by saying that this woman had gone upstairs to remove her corset, and becoming frightened when the officers entered, ran into that room. Her explanation of the fright and scat-tering of the women upon the entrance of the officers was, "They thought there was a hold-up gang there, be-

cause there was a party in there a short time before with a gun in his hand and running around over the house.'' On the direct examination of defendant the following was given:

''Q. Have you at any time during the year 1921 had any common women or known prostitutes or police characters or any dangerous men and women about that place at 201 West Third Street? A. Not that I know of.''

And, on her cross-examination, the following:

''Q. And you say that you haven't run a bawdy-house in those premises in that time? A. I haven't to my knowledge.

''Q. Not to your knowledge? A. No, sir.''

The trial court received the testimony directly from the witnesses, and was in an advantageous position in that respect. It is enough to say that the testimony above referred to, and other circumstances as set forth in the record, is such as amply justifies the finding of facts made. The court committed no error in refusing defendant's declarations of law in the nature of demurrers.

The court admitted, over the defendant's objections, testimony as to the defendant's reputation covering a period of from thirty or forty years and continuing down to the time of the raid of the officers upon her premises, and the time when the suit was filed. This is assigned as error; and it is said that this testimony, in including a period prior to the date when the act became effective, gave retroactive effect to the legislative act, and made it *ex post facto* in operation, in violation of the State and Federal constitutional provisions in that regard. Counsel for defendant has cited upon this, Jamison v. Zausch, 227 Mo. 406; Bartlett v. Ball, 142 Mo. 28; Reed v. Swan, 133 Mo. 100; State ex rel. v. Wofford, 121 Mo. 61, and other like cases, decided by this court and the courts of other states. These cases are not in point. The de-

*Reputation in Former Years.*

fendant could acquire no vested right to violate the law. In this case the trial court was passing upon the admissibility of the evidence, and also upon its weight. The court very carefully excluded testimony as to reputation not extending continuously down to the date charged in the petition, the 27th day of June, 1921. Obviously, the court received this evidence for what it was worth, as tending to show the character of the defendant, and the character of the house kept by the defendant at the very time charged in the petition. In cases of this character, evidence of the reputation of the keeper and of the inmates and frequenters of the house has always been held admissible. [Clementine v. State, 14 Mo. 112; 14 Cyc. 505; State v. Flick, 198 S. W. 1134.] The fact that the defendant testified, and the character of her testimony, has been sufficiently referred to. The nature of the proceeding brings all of the evidence here for review. In that situation this court may **Trial De Novo.** disregard the testimony objected to as incompetent and hold, as we do, that the other and relevant testimony was such as to support the finding of facts made by the trial court. [Bryant v. Shinnabarger, 285 Mo. 484; Rinkel v. Lubke, 246 Mo. l. c. 392.]

The Act in question is as follows:

"Sec. 1. That any person or persons or corporation who shall directly or indirectly establish, keep, permit or maintain any bawdyhouse, assignation house, or place of prostitution in this State shall in addition to other penalties prescribed by the laws of the State of Missouri be deemed guilty of a nuisance, and all buildings, erections, rooms and places, and the ground itself in or upon which such bawdyhouse, assignation house, or place of prostitution is conducted, permitted, carried on, maintained or continued are also declared nuisances, and all such nuisances shall be enjoined and abated as herein provided.

"Sec. 2. The Attorney General or prosecuting attorney of any county in this State where any such nui-

sance as defined in Section 1 of this act, exists, is kept, permitted or maintained may prosecute a suit in equity to abate and perpetually enjoin the same.  All such suits shall be instituted in the name of the State of Missouri at the relation of the Attorney-General or prosecuting attorney of the county, as the case may be; provided, any individual may prosecute such suit at the relation of the State of Missouri to his use, but in cases so instituted by an individual or individuals, bonds or securities for costs may be required as in other cases.  All persons, whether owners, lessees, officers, agents, inmates or employees, aiding, assisting or abetting in the commission of any such nuisance may be made parties defendants in any such cases.  The circuit courts of this State are hereby authorized and empowered to try and determine all cases arising under this act and shall have power to enforce injunctions under this act by such measures and means as are now or may hereafter be provided for the enforcement of injunctions in this State, and in abating any such nuisance may order such house, structure, building or place closed for a reasonable length of time as it seems just and wise to the court.''

The defendant insists that the act is in violation of the Fifth Amendment of the Federal Constitution and also of Section 23 of Article 2 of the Constitution of Missouri, in that it subjects the defendant **Twice in Jeopardy.** here and others in like circumstances to being twice tried and convicted for the same offense; first, for violation of the criminal statute, and again for violation of the decree enjoining the offense.

In Mugler v. Kansas, 123 U. S. 623, it was held that the State had power to make the manufacture and sale of intoxicating liquors a crime indictable, and at the same time to declare that the maintenance of a place for manufacture and sale of intoxicating liquors should be deemed a common nuisance, which may be abated by injunction at the suit of the State, such statute also making a violation of the injunction punishable; and the court

held that these provisions did not violate the provisions of the Federal Constitution.

The provision of the Federal Constitution upon the particular issue now considered, is, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb;" and the State constitutional provision is, "not shall any person, after being once acquitted by a jury, be again, for the same offense put in jeopardy of life or liberty." These provisions are declaratory of a maxim of the common-law. [State v. Snyder, 98 Mo. 554; 4 Blackstone Com. 336.] But, under the common-law, and antedating the constitutional provisions, the fact that acts constituting a nuisance might also constitute a crime did not divest a court of equity of jurisdiction to abate the nuisance by injunction. [State ex rel. v. Canty, 207 Mo. 459; State ex rel. v. Lamb, 237 Mo. 437; Ex parte Laymaster, 260 Mo. 613.] The power to abate by injunction carried with it the power to enforce, and to punish for violation of the injunction. This court could not have been unmindful of the possible violation of the injunction, and the result of that, in its consideration of the Canty and Lamb cases. We hold that the defendant has no constitutional right to violate the injunction, based upon her liability to criminal prosecution for the act, or acts which would constitute a violation of the injunction.

It is objected also that the act provides a means by which the defendant and others similarly situated may be required to testify against themselves, in violation of the Constitution in criminal actions, in that, plaintiff in the injunction suit may take defendant's testimony and use the same in a criminal prosecution. The act certainly attempts nothing of that nature in any express way; and, under the rulings of this court immunity from self-incrimination is available "before any tribunal, in any proceeding." [State v. Young, 119 Mo. l. c. 520; State v. Blackburn, 273 Mo. l. c. 482; State v. Naughton, 221 Mo. 398; Ex parte Gauss, 223 Mo. 277.]

**Self-Incrimination.**

It is objected that the act is violative of the Fourteenth Amendment of the Federal Constitution, in that, by its terms she can be deprived of her liberty without due process of law—punished for violation of an injunction—without any charge being made against her and without trial by a jury. The act confers jurisdiction upon the court in its character as a court of equity, over a subject—the abatement of a nuisance—a subject over which courts of equity have always had jurisdiction, and forming a class of cases wherein the right of trial by jury never obtained, and no constitutional right of defendant was denied in failing to give to her a trial by jury. [State ex rel. v. Canty, 207 Mo. l. c. 461; Mugler v. Kansas, 123 U. S. 623, 673; St. Louis v. Stern, 3 Mo. App. l. c. 52; Chase v. Revere House, 232 Mass. 88; Williams v. State, 150 Ga. 480.] The provision in the act providing for punishment for violation of the injunction was a declaration or giving of power of a kind which always existed, and has always been exercised by courts of equity in the abatement of nuisances. The Legislature in the exercise of the police power of the State could declare the maintenance of a bawdyhouse to be a nuisance, whether it be held it was such at common law or not. [State v. Tower, 185 Mo. 79; Littleton v. Fritz, 65 Iowa, 488; State ex rel. v. Saunders, 66 N. H. 39; State v. Marshall, 100 Miss. 626; State ex rel. v. Gilbert, 126 Minn. 95; Ridge v. State, 206 Ala. 349; People ex rel. v. Barbiere, 33 Cal. App. 770; People ex rel. v. Smith, 275 Ill. 256; King v. Comm., 194 Ky. 143; Wind v. State, 102 Ohio St. 62.] Under the foregoing authorities and many others the Legislature could extend the jurisdiction of equity over nuisances so created or declared. There is nothing contrary to this said in Ex parte Laymaster, 260 Mo. 613, but what is there said is entirely in harmony with the doctrine that it is competent for the Legislature to declare the business of the defendant to be a nuisance, and abatable as such, in an equitable action. Under the

<span style="margin-left:2em">**Due Process:**<br>**Denial of**<br>**Jury Trial.**</span>

holding in Mugler v. Kansas, supra, and the other cases cited, the act does not deny to the defendant the due process of law as required by the Federal and State constitutions.

Objection is made that the act violates constitutional provisions in that it provides for punishment of crime by civil action, and for enforcement of the criminal law by injunctive process. The proceeding is primarily directed against the forbidden use of property. The distinction between enforcement of the criminal law by prosecution under indictment or information, and the abatement of the nuisance created by acts in relation to the property constituting a crime, is pointed out in Mugler v. Kansas, 123 U. S. 1. c. 671: "The State having authority to prohibit the manufacture and sale of intoxicating liquors for other than medical, scientific, and mechanical purposes, we do not doubt her power to declare that any place, kept and maintained for the illegal manufacture and sale of such liquors, shall be deemed a common nuisance, and be abated, and, at the same time, to provide for the indictment and trial of the offender. One is a proceeding against the property used for the forbidden purposes, while the other is for the punishment of the offender."

*Punishment of Crime by Civil Action.*

Laws having the same purpose as this one, and similar in their main provisions, have been enacted in nearly all of the states of the Union, and many of them have been assailed in the courts, as violative of provisions of the Federal Constitution, or of State constitutions similar to ours. Laws of this character have been generally sustained by the courts. A reference to the statutory provisions on the subject may be seen as cited, in the opinion in Williams v. State, 150 Ga. 1. c. 483, and also citations of cases in many states wherein legislation providing for injunction, and abatement of this form of nuisance, and for closing the property from use, has been upheld as violative of no constitutional provision.

It is there said that the decision to the contrary, in Hedden v. Hand, 90 N. J. Eq. 583, is against the great weight of American authority. The principles foregoing are sustained by the Federal courts in proceedings in equity under the Act of Congress of October 28, 1919, known as the "National Prohibition Act" (41 Stat. Ch. 85, pp. 314, 315). Various phases of the subject are reviewed in United States v. Reisenweber, 288 Fed. 520 (C. C. A.).

But it is further and especially urged that the act cannot be upheld, nor the judgment sustained, because the act provides for a penalty, that the pen- **Penalty: Delegation of Legislative Power.** alty so provided is wholly within the discretion of the court, and is not fixed within any prescribed limits by the Legislature, and thereby a legislative power is wrongfully conferred upon the court, in violation of Article III of the Constitution of this State, and that thereby, and in that respect also, the defendant is denied due process of law in violation of Section 30 of Article II. Attention is called by counsel to the words in the first section of the act, "shall in addition to other penalties prescribed by the laws of the State."

The act provides for civil action. It does not provide for the recovery of a penalty, but it does provide for a forfeiture or deprivation of the use for a time, and for any purpose, of property wherein and whereon the nuisance is maintained. The primary purpose of the deprivation of use is the effectual abatement of the nuisance, and not punishment, but the deprivation arises out of a finding that the property has been and is used by the defendant for the forbidden purpose, and its result is a form of punishment, and in that sense the Act is penal.

The objection now under consideration arises upon the last sentence of Section 2 above quoted, and particularly under the closing provision that the court "in abating any such nuisance may order such house, structure, building or place closed for a reasonable length of time

as it seems just and wise to the court.'' No question is raised as to whether this provision applies to power to make such an order in the first instance and upon granting an injunction, or applies to an order made in a proceeding for violation of an order of injunction previously made. The trial court took the former view, because the decree provides first for an injunction perpetually restraining the defendant from maintaining a bawdyhouse in, or upon the premises, their closure by the sheriff, and restraining the defendant from entering thereon, or from ''using them or any part thereof, or conducting any business thereon or therein of any kind or character whatsoever, from March 13, 1922, to May 13, 1922,'' giving permission, however, to a certain named person to go upon the premises to examine the same for the purpose of reasonable care thereof, and to show the same to prospective purchasers or lessees, but for no other purpose whatsoever.

It is said, Cooley, Constitutional Limitations, page 163: ''One of the settled maxims in constitutional law is, that the power conferred upon the Legislature to make laws cannot be delegated by that department to any other body or authority.'' But a line of distinction in determining the nature of the powers delegated is pointed out in Lewis-Sutherland, Statutory Construction (2 Ed.) sec. 88: ''The true distinction is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done. To the latter no valid objection can be made.'' Upon the same subject, and stating the like conclusion upon the same grounds the following is found, 6 R. C. L. (Constitutional Law, sec. 165) page 166: ''Hence it is said that the rule that legislative powers cannot be delegated must be understood as being applicable only to cases where the discretion is essentially legislative.'' [Cincinnati, W. & Z. Railroad Co. v. Clin-

304 Mo. Sup.—45.

ton Co. Commrs., 1 Ohio St. 88; Dowling v. Lancanshire Ins. Co., 92 Wis. 70.] The last-mentioned case is cited in Nalley v. Insurance Co., 250 Mo. 452.

Upon the contention that there is a violation of the due-process clause, and a forbidden delegation of legislative power, counsel for defendant cites and relies upon Ex parte Dusenberry, 97 Mo. 504, and Young v. Railroad, 227 Mo. 307; and especially upon what was said in the opinion in the latter at page 317:

"The governmental function of declaring an act a crime or other offense against the law, to which a penalty may be affixed, can be exercised only by the legislative department, it cannot be delegated; to that extent the appellant is correct in its position. And it is also correct to say that the prescribing of the punishment or penalty is a legislative function that cannot be delegated, for example, the General Assembly could not forbid the commission of a certain act and say that one convicted thereof should be deemed guilty of a felony or misdemeanor and suffer such punishment as the jury might see fit to impose. But when the General Assembly has declared an act either a crime or negligence deserving a penalty and has prescribed the punishment or penalty within limits, not less or more, it is not a delegation of legislative power to leave to the jury fixing of the extent to the punishment or amount of the pecuniary penalty, within the prescribed limits, to be applied to the particular case. That has long been the course of criminal procedure in this State and even in states where it is not left to the jury it is left to the court to fix the penalty within the prescribed limits. Indeed the Legislature could not without inequality, and injustice, in most cases, prescribe a fixed penalty, because the circumstances under which a particular act is done usually distinguish it in degree of offense from another similar act forbidden by the same statute. It has been from time immemorial in England, from whom we inherited the common law, and in this country, for the legislative de-

partment of the government to prescribe the punishment or penalty, within limits except in certain cases, and leave it to the courts to fix the extent in each case.''

That was said in a case where the suit was to recover the penalty prescribed by Section 2864, Revised Statutes 1899, the penalty being not less than two thousand dollars and not exceeding ten thousand dollars, in the discretion of the jury. In that case the court was discussing the provision as to due process of law. In that case the discretion of the jury as to the penalty was exercised between a minimum and a maximum limit upon a matter completed, and in the application of a law to an accomplished fact. In the instant case the discretion is to be exercised primarily, not in the infliction of a penalty prescribed by the law for a past offense, but rather in the working of a forfeiture for its required and prospective effect in assuring the abatement of the nuisance. But the principle announced by Judge Valliant in Young v. Railroad, is applicable in this case, upon the question now under consideration. The question is not whether the Legislature may authorize the closing of the premises for all purposes as a means of abatement. It is whether, in giving that authority, it was .imperative, under the Constitution, that some limit be fixed within which or upon which the discretion of the court might be exercised. In Nalley v. Home Ins. Co., 250 Mo. 452, it was held that so much of an act as made the form of fire insurance policies as agreed upon by the companies and approved by the insurance Commissioner, the only lawful form, was invalid, as an unwarranted delegation of legislative authority to the commissioner. This was upon the ground that the discretion of the commissioner when exercised upon that subject, if permissible, would have made the law. In this case, and under similar statutes, the exercise of the discretion of the court that the premises shall be closed does not make the law that they may be closed. The Legislature has done that; and that far, the action of the court only executes the law. But

from the very nature of the action, a definite time must be fixed during which the order of closure shall operate. The fixing of some time is an essential and inseparable part of the order. It must then be an essential and inseparable part of the law that some limit or limits of time be fixed. If the court fixes the time, with no measure or standard fixed by the law, other than the opinion of the court as to what is a reasonable time, the court exercises a legislative discretion and makes the law in each case, so far as the essential element of time enters into the order.

There is another consideration presuasive that the fixing of some time is an essentially legislative function. In dealing with the subject of closure of premises used in the sale of intoxicating liquors, the Legislature (Sec. 6594B, Laws 1921, p. 415) authorized closure "for such period as the court may determine, not exceeding one year." The National Prohibition Act, heretofore cited, fixes a period. We have examined the statutes of many other states providing for the abatement of bawdyhouses as nuisances, and providing for a closing of the premises from any use, and find that such statutes make provision as to the period of such closure. This is persuasive in leading to the conclusion that Congress and the Legislatures of other states, and the Legislature of this State, in the act concerning intoxicating liquors, deemed it essential that some measure or standard be fixed by the legislative authority within which or upon which the discretion of the court should be exercised, in the deprivation of a defendant from all use of property, which in and of itself, was in no way harmful. The power as given the court in the provision mentioned is a delegation of a power essentially legislative, and forbidden by Article III of the Constitution.

The conclusion reached does not destroy the whole act, nor result in a complete reversal of the judgment. Without the portion rejected there remains a complete law, within the legislative intent, which authorizes a

State ex rel. Orr v. Kearns.

perpetual injunction against the forbidden use, and its enforcement by punishment for violation. The separation of the valid from the invalid portions of the judgment is equally clear. So much of the judgment as constitutes a perpetual injunction upon the defendant against using the premises, in the maintenance of a bawdyhouse, should be affirmed; and so much of it as closes the premises against any use whatsoever should be reversed. The cause should be remanded that a judgment may be entered in accordance with these conclusions.

PER CURIAM:—The foregoing opinion of LINDSAY, C., is hereby adopted as the opinion of the court. All of the judges concur, except *James T. Blair, P. J.,* who thinks the judgment should be affirmed.